### UNITED STATES v. DIETRICH.

(Circuit Court, D. Nebraska. January 8, 1904.)

1. CRIMINAL LAW—PROCEDURE—DIRECTING VERDICT ON OPENING STATEMENT.
   Where, by the opening statement for the prosecution in a criminal trial, and after a full opportunity for the correction of any ambiguity, error, or omission in the statement, a fact is clearly and deliberately admitted which must necessarily prevent a conviction and require an acquittal, the court may, upon its own motion or that of counsel, close the case by directing a verdict for the accused.

2. SAME—CRIMES AGAINST UNITED STATES.
   There are no crimes against the United States or of which the federal courts have jurisdiction except such as Congress has expressly defined or recognized and made punishable.

3. BRIBERY—CONSTRUCTION OF STATUTE—MEMBER OF CONGRESS DEFINED.
   A person elected to the office of senator of the United States, until he has been accepted by the Senate as a member and has assumed the duties of the office, is not a "member of Congress" within the meaning of Rev. St. § 1781 [U. S. Comp. St. 1901, p. 1212], making it a criminal offense for a "member of Congress or any officer or agent of the government" to receive or agree to receive a bribe for procuring or aiding to procure for another any contract, office, or place from the government.

4. CRIMINAL LAW—ELEMENTS OF OFFENSE—RELATION OF SUBSEQUENT ACTS.
   A completed act which is not an offense at the time of its commission cannot become such by any subsequent act of the party charged or of another with which it has no connection.

Indictment charging defendant, while a senator in Congress from the state of Nebraska, "duly elected, qualified and sworn according to law to perform the duties of his said office," with taking, receiving, and agreeing to receive a bribe from Jacob Fisher for procuring and aiding to procure for said Fisher the office of postmaster at Hastings, Neb.

Defendant entered a plea of not guilty. The case was called for trial, and, after a jury was impaneled and sworn, the United States attorney made an opening statement to the court and jury of the facts which the government proposed to prove in support of the charge. From this statement it appeared that on March 28, 1901, defendant was elected by the Legislature of the state of Nebraska to the office of senator in Congress from that state to fill a vacancy in a term then current, and which would continue until March 4, 1905; that at the time of such election defendant was governor of the state, the term of which office would continue until January, 1903; that he held the office of governor until May 1, 1901, when he resigned; that the credentials of his election as a senator were submitted to the Senate December 2, 1901, and later, during that day, following the favorable action of the Senate upon his election, credentials, and qualifications, he took the oath of office as a senator at the bar of the Senate, and assumed the duties of a senator; that no session of the Senate intervened between March 28, 1901, and December 2d following; that no part of the salary of a senator was paid to defendant until December 14, 1901, when he received an installment of such salary for a period dating back to the time of his election; and that all the acts charged against the defendant in this indictment were committed after March 28, 1901, and long before December 2d following. After protesting defendant's entire innocence, counsel for defendant, being of opinion that the facts proposed to be proved by the government could not constitute an offense against the United States because they did not show defendant to have been a member of Congress at the time of the commission of the acts charged, moved the court to direct the jury to render a verdict of not guilty. In response to an inquiry by the court, the United States attorney declared that his opening statement fully and accurately covered all the facts bearing upon this subject. Argument was then had upon the motion.

W. S. Summers, U. S. Atty., and S. R. Rush, Asst. U. S. Atty. John C. Cowin and R. A. Batty, for defendant.

Before VAN DEVANTER, Circuit Judge, and MUNGER, District Judge.

VAN DEVANTER, Circuit Judge (after stating the facts as above). This is a prosecution under section 1781 of the Revised Statutes [1 U. S. Comp. St. 1901, p. 1212], which declares:

"Every member of Congress or any officer or agent of the government who, directly or indirectly, takes, receives, or agrees to receive, from any person for procuring, or aiding to procure, any contract, office, or place, from the government or any department thereof, or from any officer of the United States, for any person whatever, or for giving any such contract, office, or place to any person whomsoever, * * * shall be deemed guilty of a misdemeanor, and shall be imprisoned not more than two years and fined not more than ten thousand dollars. * * * And any member of Congress or officer convicted of a violation of this section, shall, moreover, be disqualified from holding any office of honor, profit, or trust under the government of the United States."

The motion under consideration presents the single question: Was defendant a member of Congress at the time of the commission of the acts charged? Before entering upon its consideration two matters well recognized deserve mention.

Where, by the opening statement for the prosecution in a criminal trial, and after full opportunity for the correction of any ambiguity, error, or omission in the statement, a fact is clearly and deliberately admitted which must necessarily prevent a conviction and require an acquittal, the court may, upon its motion or that of counsel, close the case by directing a verdict for the accused. The court has the same

power to act upon such an admission that it would have to act upon the evidence if produced. It would be a waste of time to listen to evidence of other matters when at the outset a fact is clearly and deliberately admitted which must defeat the prosecution in the end. Oscanyan v. Arms Co., 103 U. S. 261, 26 L. Ed. 539; Liverpool, etc., Co. v. Commissioners, 113 U. S. 33, 37, 5 Sup. Ct. 352, 28 L. Ed. 899; Butler v. National Home, 144 U. S. 64, 71, 73, 12 Sup. Ct. 581, 36 L. Ed. 346; Pratt v. Conway, 148 Mo. 291, 299, 49 S. W. 1030, 71 Am. St. Rep. 602; Lindley v. Atchison, etc., Co., 47 Kan. 432, 28 Pac. 201.

Excepting that treason is defined by the Constitution, there are no crimes against the United States save such as Congress has expressly defined or recognized and made punishable. The federal courts have no jurisdiction over common-law crimes. Cooley, Const. Lim. (6th Ed.) p. 30; Black Const. Law (2d Ed.) p. 157. In Tennessee v. Davis, 100 U. S. 257, 275, 25 L. Ed. 648, the Supreme Court said upon this subject:

"Certain implied powers, it is admitted, must necessarily result to courts of justice, such as to fine for contempt or imprison for contumacy; but the jurisdiction of crimes against the authority of the United States is not among such implied powers, the universal rule in the federal courts being that the legislative authority of the Union must first make an act a crime, affix a punishment to it, and prescribe what courts have jurisdiction of such an indictment, before any federal tribunal can determine the guilt or innocence of the supposed offender."

Other decisions applying this rule are United States v. Hudson, 7 Cranch, 32, 3 L. Ed. 259; United States v. Coolidge, 1 Wheat. 415, 4 L. Ed. 124; United States v. Hall, 98 U. S. 343, 345, 25 L. Ed. 180; United States v. Britton, 108 U. S. 199, 206, 2 Sup. Ct. 531, 27 L. Ed. 698; United States v. Eaton, 144 U. S. 677, 687, 12 Sup. Ct. 764, 36 L. Ed. 591. The question, therefore, in every criminal prosecution in the courts of the United States, is not whether the act charged is immoral or abhorrent to all right-minded members of society, but does any act of Congress make it criminal and provide for its punishment?

If any act of Congress has made the acts here charged criminal, and has provided for their punishment, it is section 1781. None other is referred to by counsel for the government. This section contains two distinct provisions which are in marked contrast. The first, heretofore quoted, makes it a punishable offense for any "member of Congress or any officer or agent of the government" to take, receive, or agree to receive a bribe "for procuring or aiding to procure any contract, office or place" for another person, from the United States or any of its departments or officers. The second makes it a punishable offense for any "member of Congress" to take, receive, or agree to receive a bribe "after his election as such member, for his attention to, services, action, vote, or decision on any question, matter, cause or proceeding which may then be pending, or may by law or under the Constitution be brought before him in his official capacity, or in his place as such member of Congress." Giving to the words employed their ordinary meaning, the first provision seems to be directed against persons who are members of Congress, officers or agents of the government, while the second seems to be directed against persons who are members of Congress, or members-elect.

Is there anything in the statute which indicates that this difference was not intended? We think not. Officers and agents of the government are named in the first provision, but not in the second. So far as it concerns members of Congress, the first provision principally, if not wholly, relates to procuring offices, contracts, or places for others—matters in which action by members of Congress is optional, and not a duty enjoined by law; while the second provision principally, if not wholly, relates to matters wherein action by members of Congress is enjoined as an official duty, and is not optional. The first provision is accompanied by the declaration that "every person who * * * offers or agrees to give, or gives, or bestows" a bribe "for the procuring or aiding to procure any such contract, office or place," shall be deemed guilty of a misdemeanor and punished therefor; but the second provision is not accompanied by any declaration against the person who gives or agrees to give the bribe. The differences in terms and subject-matter make the two provisions distinct and independent. To read into the second the words "or any officer or agent of the government," and the declaration against the person who gives or agrees to give the bribe, and to read into the first the words "after his election as such member," is to reconstruct and supplement the work of Congress. This the courts cannot do. Their business is not that of forming statutes, but that of expounding the existing text by a fair interpretation. The object of their inquiry is not what the law ought to be, but what it is. The sense in which words are used in statutes is in part reflected by other words with which they are associated. In the first provision of this section the words "member of Congress" are associated with the words "officer or agent of the government," which imply actual and present, rather than expected and future, incumbency of an office or agency. In the second provision the words "member of Congress" are used in connection with the words "after his election as such member," which plainly include the period between election and induction into · office, thereby bringing within that provision members-elect as well as members of Congress. Obviously, any person who undertakes to procure or to aid in procuring for another an office or place from the United States or any of its departments or officers ought to act honestly and under an immediate consciousness of the duty which every citizen owes to the government in that regard; but where he has received or is to receive therefor "money, property, or other valuable consideration" the duty of the citizen is in much danger of being neglected. Clearly, Congress has the power to subject to criminal prosecution and punishment any person, whether member of Congress, member-elect, officer, or agent of the government, or otherwise, who receives or agrees to receive money, property, or other valuable consideration for procuring or aiding to procure for another any office or place under the federal government; but the full authority of Congress has not been exerted in section 1781. The language there employed clearly does not include candidates for Congress, ex-members of Congress, or officers or members of national political committees, although their support or aid, like that of members-elect of Congress, is not infrequently held in such esteem as to place upon them special obligations to act

honorably in recommending persons for appointment to office or place under the United States. The persons in respect of whom Congress has exerted this authority are designated by the words "every member of Congress or any officer or agent of the government." None other is included, no matter what his relation to the government or to the people.

We have thus far confined ourselves to a statement of those considerations which, upon an examination of section 1781 alone, convince us that the words "member of Congress" in its first provision are not used in the same sense that the words "member of Congress * * * after his election as such member" are used in its second provision. Reference to other legislation by Congress confirms this view. The act of March 3, 1883, c. 143, § 1, 22 Stat. 632 [U. S. Comp. St. 1901, p. 17], speaks of persons who have been elected senators, but who have not qualified as such, as "senators elected." Section 38, Rev. St. [U. S. Comp. St. 1901, p. 17], speaks of persons who have been elected representatives and delegates to Congress, but who have not qualified as such, as "representatives and delegates elect." Section 31, Rev. St. [U. S. Comp. St. 1901, p. 14], is of like character. Section 39, Rev. St. [U. S. Comp. St. 1901, p. 18], speaks of the persons last named, after they have taken and subscribed the official oath at the bar of the House, as "each member and delegate." Section 1058, Rev. St. [U. S. Comp. St. 1901, p. 731], declares "members of either house of Congress shall not practice in the Court of Claims." Section 1782, Rev. St. [U. S. Comp. St. 1901, p. 1212], makes it a punishable offense for any "senator, representative, or delegate, after his election and during his continuance in office," to receive or agree to receive a bribe, under conditions there named. Section 3739, Rev. St. [U. S. Comp. St. 1901, p. 2508], makes it a punishable offense for a "member of or delegate to Congress" to enter into, hold, or enjoy a contract or agreement with the United States of the character there named. Section 5450, Rev. St. [U. S. Comp. St. 1901, p. 3680], makes it a punishable offense for any person to bribe or offer to bribe, for purposes there named, "any member of either house of Congress, either before or after such member has been qualified or has taken his seat." Section 5500, Rev. St. [U. S. Comp. St. 1901, p. 3709], makes it a punishable offense for "any member of either house of Congress, * * * either before or after he has been qualified or has taken his seat as such member," to ask, accept, or receive a bribe, under conditions there named. The act of January 16, 1883, c. 27, § 11, 22 Stat. 406 [U. S. Comp. St. 1901, p. 1223], makes it a punishable offense for a "senator, or representative, or territorial delegate of the Congress, or senator, representative, or delegate elect," to solicit or receive certain political assessments. These several statutes illustrate that a person who has been elected a member of or delegate to Congress, but who has not been admitted to his seat and has not qualified, is not spoken of by Congress as a member or delegate, without qualifying or explanatory words, but is referred to by words aptly describing one in that situation.

A statute which is plain and unambiguous does not require or admit of interpretation. The term "member of Congress" is not doubt-

ful or ambiguous. It is of common use and well understood. When employed in a statute, without qualification or explanation, it should be taken in its natural, plain, and ordinary signification. Bouvier says of "member": "An individual who belongs to a firm, partnership, company, or corporation. One who belongs to a legislative body, or other branch of the government; as, a member of the House of Representatives; a member of the court." The Century Dictionary says: "A part of any aggregate or whole; one of a number of associated parts or entities; any unit or division that can be considered separately as part of a total." In referring to Congress we speak of members-elect, members, and ex-members, and by these several expressions we convey different meanings well understood by all persons, whether in or out of the legal profession. One of these expressions is never used as the equivalent of another. When we speak of a member of Congress we refer to one who is a component part of the Senate or House of Representatives; one who is in office, not out of office; one who is sharing the responsibilities and privileges of membership.

Under the present laws of the United States, membership in Congress cannot be imposed upon one without his consent. Cushing's Law of Legislative Assemblies, §§ 465–468, 471, 472; McCrary on Elections (4th Ed.) § 352; Edwards v. United States, 103 U. S. 471, 474, 26 L. Ed. 314; Commonwealth v. Hawkes, 123 Mass. 525, 530. Acceptance is as essential to induction into public office as is election or appointment. In respect to some offices the manner and time of acceptance are prescribed in such manner as to render compliance therewith indispensable, but in other instances an office is accepted by entering upon the discharge of its duties. Usually the taking of an oath of office, and sometimes the giving of a bond for the faithful discharge of the duties of the office, is required; but generally, where one elected or appointed to an office is admitted thereto, and discharges its duties without taking the prescribed oath or giving the required bond, he is deemed a de facto officer, and is estopped to deny his right to the office, when being prosecuted for any offense committed in the exercise of its duties or authority. 1 Bishop, New Cr. L. § 464. There is, however, no estoppel unless there has been an incumbency of the office—an actual discharge of its duties; indeed, one cannot be a de facto officer unless he is in possession of the office and in the exercise of its functions. Under Const. art. 1, § 5, each house of Congress is the exclusive judge of the election, returns, and qualifications of its own members. In addition, therefore, to an election or appointment on behalf of one of the states of the Union, and to acceptance by the person elected or appointed, the favorable judgment of the Senate upon his election, credentials, and qualifications is essential to constitute one a member of the Senate. Both Const. art. 6, and the statute (section 28, Rev. St. [U. S. Comp. St. 1901, p. 13]) require the taking of an oath of office. The taking of this oath at the bar of the Senate is the usual manner of indicating acceptance and of being inducted into the office; but it is not probable that a failure to take the oath would affect the acts of one who is by the Senate actually admitted to a seat therein, and who actually exercises the func-

tions of that office, or that it would constitute any defense to a prose-cution for a criminal offense, such as is here charged, committed during his incumbency of the office.

The defendant was not admitted to a seat in the Senate and did not enter upon the discharge of the duties of that office until December 2, 1901. Not until that day did the Senate consider or act upon his election, credentials, and qualifications. Until then it was not known, and could not have been, in the absence of an earlier session of the Senate, whether his election, credentials, and qualifications would be deemed by the Senate, the sole and exclusive judge, to be such as to entitle him to membership in that body. Immediately following the favorable action of the Senate upon his election, credentials, and qualifications, the defendant took the oath of office as a senator, which was an assumption of the duties of that office, but until then he had not accepted the office and was not obligated to its acceptance. Until then it was optional with him to accept or decline; and if on December 2, 1901, he had exercised that option by declining instead of accepting, he would not have been a senator at all under the election of March 28, 1901. The Senate has authority to compel the attendance of absent members, but, so far as we are advised, no one has ever suggested that this authority can be exercised over a person who has not accepted membership in that body. To do that would be to charge him with the duties of the office—in fact, to put him in the office—against his will. Under the contention of counsel for the government, the defendant was a senator from the time of his election, March 28, 1901, but at that time and for a month thereafter he was governor of the state—an office which is incompatible with that of senator in Congress. The defendant was lawfully in the office of governor, and was entitled, while properly discharging its duties, to serve out the term for which he had been elected by the people of the state. The state Legislature did not and could not remove him from that office by electing him to the office of senator in Congress. It may be that to have continued in the office of governor beyond the next meeting of the Senate would have operated as a declination of the office of senator (the case of Gen. Blair of Missouri, Reports of Committees 1st Sess., 38th Cong., No. 100, and that of Gov. Hill of New York, Cong. Rec., vol. 23, pt. 1, 52d Cong., 2d Sess., pp. 74, 180, seem to be opposing precedents on this question); but to have continued in the office of governor after election as a senator, but not beyond the next meeting of the Senate, would have been permissible under the law, and would not have affected defendant's right to accept the senatorship if the Senate should give its favorable judgment upon his election, credentials, and qualifications. While the two offices of governor of a state and senator in Congress cannot be held by the same person at the same time, being a senator-elect is not being a senator, and hence the same person may be governor of a state and a senator-elect at the same time without holding two offices. This is the position which has been uniformly taken by the House of Representatives under that provision of Const. art. 1, § 6, which declares: "No person holding any office under the United States shall be a member of either house during his continuance in

office." The matter was extensively considered during the Fifteenth Congress. Samuel Herrick, while holding the office of United States District Attorney, was elected to the House of Representatives in that Congress in October, 1816, and after his election continued to hold the office of District Attorney until within two days of the beginning of the first session of that Congress in December, 1817, when he resigned it preparatory to accepting membership in the House of Representatives. It was ruled that he was not a member in advance of the organization of that body, or in advance of his admission thereto, and therefore that there had been no concurrent holding of two incompatible offices. Contested Elections H. R. U. S., Clarke & Hall, 287. In the report of the Committee on Elections it was said:

"Our rule in this particular is different from that of the House of Commons. It is also better, for it makes our theory conform to what is fact in both countries—that the act of becoming in reality a member of the House depends wholly upon the will of the person elected and returned. Election does not, of itself, constitute membership, although the period may have arrived at which the congressional term commences. * * * Neither do election and return create membership. These acts are nothing more than the designation of the individual, who, when called upon in the manner prescribed by law, shall be authorized to claim title to a seat. This designation, however, does not confer a perfect right; for a person may be selected by the people, destitute of certain qualifications, without which he cannot be admitted to a seat. * * * So, also, if a person duly qualified be elected and returned, and die before the organization of a House of Representatives, we do not think he could be said to have been a member of that body, which had no existence until after his death."

Like rulings were made in the cases of Elias Earle (Id. 314), George Mumford (Id. 316), and Robert C. Schenck (Reports Committees 36th Cong., 1st Sess., No. 100; McCrary on Elections, [4th Ed.] §§ 338, 339). This view of the true meaning of the term "member of Congress" as used in the Constitution and statutes has also been taken in the Department of Justice. Mr. Attorney General Williams, 14 Op. A. G. 133, in an opinion given to the Secretary of War, said of the provision in section 1781, here under consideration:

"The prohibition in this clause is laid upon members of Congress—not members-elect, but those who have taken the oath of office and qualified."

The same officer advised the Secretary of the Treasury as follows (Id. 406):

"Section 6, art. 1, of the Constitution provides that 'no person holding any office under the United States shall be a member of either house during his continuance in office'; but a representative in Congress, in my opinion, does not become a member of the House until he takes the oath of office as such representative; therefore he may lawfully hold any office from his election until that time."

Mr. Attorney General Devens, 15 Op. A. G. 280, referring to sections 3739–3742, Rev. St. [U. S. Comp. St. 1901, pp. 2508, 2509], advised the Secretary of War:

"In my opinion these sections have now no application to the contract made with Mr. Romero. Although it is understood that he has been elected a delegate to the Forty-Fifth Congress, yet that Congress has never met; and, as it is the judge of its own elections, when it meets it may not accept Mr. Romero as a member, so that he may not be able to obtain his seat therein. Neither, if it should recognize his election, will he become a member until he

accepts the duties of the office and takes the appropriate oath.     Until this event occurs, the legislation referred to has no application to him."

A case much in point is that of Cordiell v. Frizell, 1 Nev. 130, 132, in which it became necessary to determine the meaning of the word "officer" in section 13 of the Schedule to the Constitution under which the state of Nevada was admitted into the Union.    That section declared:

"All county officers under the laws of the territory of Nevada at the time when the Constitution shall take effect * * * shall continue in office until the first Monday of January, 1867, and until their successors are elected and qualified."

By the state's admission on October 31, 1864, its Constitution took effect after the election of certain persons to county offices, but before their qualification, and a controversy arose between an incumbent of one of these offices and the officer-elect as to which was entitled to it under the Constitution.    The court said:

"Those who have been elected but not inducted into office are, properly speaking, officers-elect; those in office are simply officers; those who have been in office, but have gone out, are properly ex-officers.    It is very proper, in either conversation or writing, when speaking of an officer-elect, to leave off the suffix, and style him simply an officer, if the context of the sentence shows you are speaking of one not yet inducted into office, but who is to be at a future day; so, too, in speaking of an ex-officer, you may leave off the prefix under like circumstances.    But if the term 'officer' is used in a sentence where there is nothing to qualify or control its meaning, everybody understands it refers to an officer then holding and enjoying the office.    It means neither an ex-officer nor an officer-elect.    In section 13 of the schedule the term 'officers' means those persons who may be actually holding the office referred to when the Constitution is adopted, and not to ex-officers who may have held them at some time past, nor to officers-elect who might expect to hold them at some future day."

By the press reports our attention is called to the conviction, in the Circuit Court of the United States for the Eastern District of New York, of Edmund H. Driggs upon a charge of receiving, while a representative-elect in Congress, a bribe for services rendered by him in procuring for another a contract with the United States through the Post-Office Department.    The instructions given by the court to the jury in that case, and other information relating to it, have been received through officers of the court.    Separate indictments were originally returned against Driggs under the first provision of section 1781 and under section 1782, the first of which, as before shown, is directed against "every member of Congress, or any officer or agent of the government," and the second against any "senator, representative, or delegate, after his election and during his continuance in office."    The indictments under the first provision of section 1781, which does not apply to members-elect, were abandoned, and the conviction was had on an indictment under section 1782, which applies equally to members-elect and members.    The proceedings against Driggs have been therefore in entire harmony with our views.    While procuring or aiding to procure a contract for another is dealt with by both sections, procuring or aiding to procure an office seems to be dealt with only by the first provision of section 1781, and counsel for the government has not contended otherwise.

Counsel for the government earnestly pressed upon us the fact that the defendant received the salary of a senator for a period dating back to the time of his election; but we are clearly of opinion that this has no legal bearing upon the question under consideration. It is well to note that this payment was made December 14, 1901, which was after the defendant was admitted to membership in the Senate, and long subsequent to the time of the alleged commission of the acts charged against him. It would seem to be a sufficient answer to the argument based upon this acceptance of salary to refer to the statutes (Act March 3, 1883, c. 143, § 1, 22 Stat. 632; Act July 31, 1894, c. 174, § 1, 28 Stat. 162; section 38, Rev. St. [U. S. Comp. St. 1901, pp. 17, 21]) which expressly provide for the payment of salary · to senators, representatives and delegates-elect from the 4th of March, when the constitutional term begins, until there is a session of Congress, and to refer to the statute (section 51, Rev. St. [U. S. Comp. St. 1901, p. 20]), formerly applicable to senators as well as representatives and delegates, but now only applicable to the latter, which authorizes such payment, in some instances of filling vacancies, from the time that the compensation of the predecessor ceased, thereby covering a period antedating election as well as admission to membership. See Report of Senate Committee on Privileges and Elections, Cong. Rec., Vol. 28, pt. 5, 1st Sess. 54th Cong., p. 4367. But whether or not the defendant was a senator on July 8, 1901, the date of the offense as charged, must be determined by the conditions existing at that time, and cannot be affected by any subsequent event or act. If he was then a senator, the subsequent refusal of the proper disbursing officer to pay his salary for a period including that date, or the defendant's failure to assert a right to such salary, would not change his relation to the Senate, or affect the character of his acts, retrospectively or otherwise; and if he was not then a senator any subsequent assertion by him, or recognition by the disbursing officer, of a claim for such salary, would be equally impotent to retrospectively give him or his acts an official character which he and they did not have at the time. Certainly the payment of the salary of a representative in Congress to Mr. Roberts of Utah (31 Stat. 312), whose election, credentials, and qualifications recently failed to command the favorable judgment of the House of Representatives, and who was not permitted to take the oath or assume the duties of a Representative, did not make him a member of Congress. The right to a public office carries with it a right to the salary attached to the office, but payment or acceptance of the salary does not carry with it a right to the office.

This is a prosecution for a criminal offense. To be punishable, the act charged must have possessed, at the time when its commission was complete, every element necessary to its criminality under the statute. A completed act which is not an offense at the time of its commission cannot become such by any subsequent act of the party charged, or of another, with which it has no connection; and this is true whether the first act was done for a good or a bad purpose. United States v. Fox, 95 U. S. 670, 24 L. Ed. 538.

Because membership in Congress is indispensable, under the statute, to the commission of the offense here charged, and because, upon the

facts admitted by counsel for the government, it is clear to us that the defendant was not a member of Congress at the time when it is proposed to be proved that he committed the acts described in the indictment, the jury will be directed to return a verdict of not guilty.