No. 49,810

STATE OF KANSAS, *Appellant,* v. B. G. WHORTON, *Appellee.*

(589 P.2d 610)

Opinion filed January 20, 1979.

*Robert Sandilos,* assistant district attorney, argued the cause, and *Curt T. Schneider,* attorney general, and *Vern Miller,* district attorney, were with him on the brief for the appellant.

*Russell Shultz,* of Shultz, Fry & Fisher, of Wichita, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

SCHROEDER, C.J.: This is an appeal in a criminal action by the State from an order dismissing the complaint-information charging B. G. Whorton (defendant-appellee) with sixteen counts of felony theft in violation of K.S.A. 21-3701.

The State argues the trial court erred as a matter of law in dismissing the complaint-information because it relied on extrinsic evidence outside the four corners of the information to find the information insufficient.

The defendant was charged in a complaint-information filed July 18, 1977, with sixteen counts of felony theft. Count I, as an example, provided:

"In the County of Sedgwick and State of Kansas, and on or about the 18th day of May, 1976, one B. G. WHORTON a/k/a BILL WHORTON a/k/a BILL G. WHORTON, did unlawfully, feloniously and wilfully, obtain or exert unauthorized control over property; to-wit: a negotiable instrument in the form of a check in the amount of Five Hundred and No/100 ($500.00) Dollars drawn by Don Poland, of Isabel, Kansas, on the Isabel State Bank, Isabel, Kansas, dated May 12, 1976, payable to the order of Bi-Agra Association, which said check the same B. G. Whorton a/k/a BILL WHORTON a/k/a BILL G. WHORTON, did deposit at the

First National Bank (East Branch), Wichita, Sedgwick County, Kansas, to the credit of a bank account entitled Bi-Agra of America Association which last said account was surreptitiously, unlawfully, wilfully, and deceptively opened by the same B. G. WHORTON a/k/a BILL WHORTON a/k/a BILL G. WHORTON, without the knowledge, authority, and consent of the Bi-Agra Association to which the maker of the same check, Don Poland aforesaid, had intended the check to be delivered, received and deposited, the Bi-Agra Association, payee of the check being a wholly different and separate corporate entity from the Bi-Agra of America Association, and, further, the same B. G. WHORTON, a/k/a BILL WHORTON a/k/a BILL G. WHORTON, did convert the proceeds of the same check to his own use and with the intention to permanently deprive the owners, to-wit: Bi-Agra Association and Don Poland of the possession, use or benefit of said property, of a value of more than $50 good and lawful money of the United States of America; contrary to the form of the statute K.S.A. 21-3701(a), (Theft, Class D Felony, Count One)."

The general allegations in the other counts were the same; however, the date, amount, particular check involved, and name of the drawer on each check varied in each count.

The defendant's trial began on January 16, 1978. Clifford Couch was called as the first witness in the case. He testified he had written a check to Bi-Agra Association and delivered it to Mr. G. L. Pottroff. When asked what benefits he derived from membership in the Bi-Agra Association, defense counsel immediately objected because the defendant was not alleged to have made representations to Mr. Couch. The trial court excused the jury and after some discussion, sustained the objection. Thereafter, the court recessed the trial in order for the State to determine how it wished to proceed.

The next morning, as a result of its own agreement to stipulate, the State moved to strike certain phrases from the complaint as surplusage. The amended information in Count I, for example, provides as follows:

"In the County of Sedgwick and State of Kansas, and on or about the 18th day of May, 1976, one B. G. WHORTON a/k/a BILL WHORTON a/k/a BILL G. WHORTON, did unlawfully, feloniously and wilfully, obtain or exert unauthorized control over property; to-wit: a negotiable instrument in the form of a check in the amount of Five Hundred and No/100 ($500.00) Dollars drawn by Don Poland, of Isabel, Kansas, on the Isabel State Bank, Isabel, Kansas, dated May 12, 1976, payable to the order of Bi-Agra Association, with the intention to permanently deprive the owner, to-wit: Bi-Agra Association of the possession, use or benefit of said property, of a value of more than $50 good and lawful money of the United States of America; contrary to the form of the statute K.S.A. 21-3701(a), (Theft, Class D Felony, Count One)."

Defense counsel stated the amended information changed the theory of the case. The State, on the other hand, contended the original complaint-information should be interpreted as pleading in the alternative; thus, the amendment removed surplusage and did not materially alter the charge. The trial court then sustained the State's motion to amend.

With the jury still excused, the parties also stipulated that a total of fourteen corporations using as a part of their name "Bi-Agra" and "Association" were in existence and chartered in the State of Kansas. Defense counsel argued since the individual check drawees, who were endorsed as witnesses, were stricken from the complaint, the State could not prove ownership of the checks in the proper Bi-Agra Association because officers of the fourteen various associations were not endorsed as material witnesses. He then moved for *judgment of acquittal.* The State argued the determination of which Bi-Agra Association owned the checks was a question for the jury, and counsel assured the court the individual directors responsible for forming the defrauded Bi-Agra Association were endorsed as witnesses and would establish ownership of the checks in the Association.

Thereafter, the court *dismissed* the information and stated:

"The Court feels that the charges initially against—which had been standing in court, were duplicitious and they allege two separate crimes with ownership in one of Bi-Agra Association and Don Poland. It's the Court's feeling that Bi-Agra Association and Don Poland in count number one, indicates joint ownership and that the defendant, when this trial started, would be proceeding in the fact that he was defending against the theft from one ownership; and to strike that, changes the nature of the charge and raises possible other defenses that he might have. It is also the Court's understanding, that based on the stipulation that was attempted in this court, that there are at least a dozen entities in operation under the name of Bi-Agra Association, which the defendant missed some connection with and that the general charge of the ownership of this check, in being Bi-Agra Association—based on the statements made by counsel, I think raises serious question as to whether or not the charge is specific enough that he can adequately be defended. So, on that basis I am going to sustain Mr. Shultz' motion to dismiss and dismiss the jury."

The State has duly perfected this appeal.

Nowhere in the record is there an indication that a question was reserved by the prosecution.

Before this court is permitted to consider the issue raised by the State we must determine whether an appeal properly lies in this case. K.S.A. 1977 Supp. 22-3602(*b*) provides in pertinent part:

"Appeals to the supreme court may be taken by the prosecution from cases before a district judge or associate district judge as a matter of right in the following cases, and no others:

"(1)  From an order dismissing a complaint, information or indictment;

"(2)  From an order arresting judgment;

"(3)  Upon a question reserved by the prosecution."

No appeal lies from a judgment of acquittal. See *State v. Crozier,* 225 Kan. 120, 587 P.2d 331 (1978); *State v. Gustin,* 212 Kan. 475, 479, 510 P.2d 1290 (1973). Mr. Shultz, defendant's counsel, moved for a judgment of acquittal but the court referred to the motion as one for dismissal. Thus, the crucial question is whether a judgment of acquittal or a dismissal occurred here.

A judgment of acquittal was last defined as "a resolution, correct or not, of some or all of the factual elements of the offense charged." *United States v. Scott,* 437 U.S. 82, 97, 57 L.Ed.2d 65, 98 S.Ct. 2187 (1978). Furthermore, a trial judge's characterization of his own action does not control the classification of the action. *United States v. Scott,* 437 U.S. at 96; *United States v. Martin Linen Supply Co.,* 430 U.S. 564, 571, 51 L.Ed.2d 642, 97 S.Ct. 1349 (1977); *United States v. Wilson,* 420 U.S. 332, 336, 43 L.Ed.2d 232, 95 S.Ct. 1013 (1975); *United States v. Jorn,* 400 U.S. 470, 478 n. 7, 27 L.Ed.2d 543, 91 S.Ct. 547 (1971). Finally, it has been held where a motion to dismiss challenges the sufficiency of the evidence, the proper motion should be for a judgment of acquittal. See *United States v. Ambers,* 416 F.2d 942 (5th Cir. 1969), *cert. denied,* 396 U.S. 1039 (1970).

The State argues the trial court "dismissed" the information based upon a review of the checks offered as evidence in this case as well as the stipulations concerning the existence of numerous Bi-Agra Associations. It asserts the determination of which Bi-Agra Association owned the checks involved questions of fact. We agree. The record reflects the trial court, correct or not, did resolve factual issues in the instant case; thus, a judgment of acquittal occurred.

Our inquiry does not end here. We must next determine whether the judgment of acquittal was timely. The motion came while the jury was recessed during the direct examination of the first witness. K.S.A. 22-3419 provides in part:

"(1)  The court on motion of a defendant or on its own motion shall order the entry of judgment of acquittal of one or more crimes charged in the complaint, indictment or information *after the evidence on either side is closed* if the

evidence is insufficient to sustain a conviction of such crime or crimes." (Emphasis added.)

Discussion of the federal counterpart of this statute, Rule 29(*a*), in 2 Wright & Miller, Federal Practice and Procedure: Criminal § 462 (1969) states:

"Despite what appears to be the clear language of the rule, judgment of acquittal may be ordered even before the government has closed its case if the basic facts lead inescapably to a conclusion that the prosecution must fail regardless of whatever evidence may be introduced." (p. 244.)

See also 8A Moore, Federal Practice ¶ 29.04 (2d ed. 1978); Note, 71 Yale L.J. 171, 172-73 (1961).

Judgments of acquittal have been rendered before the close of the prosecution's case where the government's opening statement shows it has no case. *United States v. Dietrich,* 126 Fed. 676 (C.C.D. Neb. 1904); see also Annot., 75 A.L.R.3d 649 (1977). They have also been entered where basic facts lead to the conclusion the prosecution must fail regardless of the evidence to be introduced. *United States v. Maryland Cooperative Milk Pro.,* 145 F. Supp. 151, 152 (D.D.C. 1956). See also *United States v. Weissman,* 266 U.S. 377, 69 L.Ed. 334, 45 S.Ct. 135 (1924).

Thus the defendant's motion for judgment of acquittal was timely under the facts presented here.

Finally we note a judgment of acquittal, correctly or incorrectly arrived at, terminates the prosecution, and the double jeopardy clause of the Fifth Amendment bars further proceedings against the defendant. *United States v. Scott,* 437 U.S. at 91; *Sanabria v. United States,* 437 U.S. 54, 57 L.Ed.2d 43, 98 S.Ct. 2170 (1978); *United States v. Martin Linen Supply Co.,* 430 U.S. at 571; *Fong Foo v. United States,* 369 U.S. 141, 7 L.Ed.2d 629, 82 S.Ct. 671 (1962); *State v. Gustin,* 212 Kan. at 479.

Therefore, we hold no appeal lies from a judgment of acquittal, and the issues raised by the State cannot be considered in this appeal.

The judgment of the lower court is affirmed.

FROMME, J., dissenting. I respectfully dissent from the opinion of the majority. The action in the trial court was terminated before the State's first witness had been fully examined. The dismissal of the action came as a result of a determination by the court that the charge in the information as amended was not specific enough.

The majority holds that the court's action in fact amounted to a judgment of acquittal and therefore could not be the basis for an appeal. I do not agree that a judgment of acquittal was entered.

A judgment of acquittal in a criminal trial is a creature of statute. K.S.A. 22-3419 provides:

"(1) The court on motion of a defendant or on its own motion shall order the entry of judgment of acquittal of one or more crimes charged in the complaint, indictment or information *after the evidence on either side is closed if the evidence is insufficient to sustain a conviction of such crime* or crimes. If a defendant's motion for judgment of acquittal at the close of the evidence offered by the prosecution is not granted, the defendant may offer evidence without having reserved the right." Emphasis supplied.

As is apparent from reading this statute a motion for judgment of acquittal may be entertained "after the evidence on either side is closed." In the present case the trial court aborted the trial in the middle of the testimony of the first witness for the State.

The basis for the majority opinion contained in Syl. ¶ 1 is the federal case *United States v. Scott,* 437 U.S. 82, 97, 57 L.Ed.2d 65, 98 S.Ct. 2187 (1978). In my view, it is taken out of context and is a misleading statement of law when applied to the facts of the present case. It should be noted the trial court in the *Scott* case entered a judgment of dismissal at the close of all the evidence. On appeal it was held that the action of the trial court in aborting the action at the close of all the evidence was at the request of the defendant who sought to have his trial terminated without submission of his guilt or innocence to the jury. The *Scott* court held a second trial of the defendant would not offend the double jeopardy clause. In *Scott* the trial court dismissed the charges on the ground that the defense had been prejudiced by preindictment delay. On appeal the judgment of dismissal entered by the trial court was reversed and the case was remanded for trial. The resolution of factual elements referred to in *Scott* concerned the trial court's erroneous determination that the defense had been prejudiced by preindictment delay. This is entirely different from what we have in the present case.

In the *Scott* decision the United States Supreme Court overruled *United States v. Jenkins,* 420 U.S. 358, 43 L.Ed.2d 250, 95 S.Ct. 1006 (1975), and changed the previous conception of the protection afforded by the double jeopardy clause. The *Scott* court held: When a defendant seeks and obtains the termination of proceedings against him during a trial before any finding by

the court or jury as to guilt or innocence and the trial court's decision which terminated the case is reversed on appeal no interest protected by the double jeopardy clause is involved. In such case the defendant has not been deprived of his valued right to go to the first jury; only the public has been deprived of its valued right to one complete opportunity to convict those who have violated its laws. *Arizona v. Washington,* 434 U.S. 497, 54 L.Ed.2d 717, 98 S.Ct. 824 (1978).

The trial court in the present case dismissed the action. Defense counsel first argued that the amended information changed the theory of the case. That argument was not sustained by the trial court. It was then stipulated that there were fourteen corporations in the state using the "Bi-Agra Association" name. The defendant then argued the State could not prove ownership of the checks without having the officers of these corporations endorsed as witnesses. The argument was without merit. An officer of the corporation is not the only one who can establish ownership of the checks the corporation receives. The drawer could testify to this. These checks were apparently issued to buy shares of stock in the particular corporation and the drawer surely could testify to which corporation was entitled to receive his or her check. It is also possible that some employee other than an officer of the corporation could establish that his or her corporation was entitled to the proceeds of the checks.

The information was drawn to charge felony theft in violation of K.S.A. 21-3701. The trial court in dismissing the information stated that the original charges were duplicitous. After the amendment the trial court then stated the charges were not specific enough to be defended. I cannot agree with the trial court's decision. The charge was that defendant had an intention to permanently deprive Bi-Agra Association of the money. Which particular Bi-Agra Association was the owner of a particular check was a matter of proof. If the checks had been made out to John Smith and it was stipulated at the trial there were fourteen John Smiths in Kansas, it would be a matter of proof whether the check belonged to John Smith of Topeka or of Wichita or of Kansas City or of Hutchinson or of some other city. Defendant did not request a bill of particulars.

We turn next to the question of jeopardy. The case was, in my opinion, improperly dismissed by the trial court on motion and

with the consent of the defendant. K.S.A. 1977 Supp. 21-3108(1)(c) provides:

"(1) A prosecution is barred if the defendant was formerly prosecuted for the same crime, based upon the same facts, if such former prosecution:

. . . .

"(c) *Was terminated without the consent of the defendant* after the defendant had been placed in jeopardy, . . . A defendant is in jeopardy when he or she is put on trial in a court of competent jurisdiction upon an indictment, information or complaint sufficient in form and substance to sustain a conviction, and in the case of trial by jury, when the jury has been impaneled and sworn, or where the case is tried to the court without a jury, when the court has begun to hear evidence." Emphasis supplied.

As I read the record in this case the trial was aborted by reason of defendant's motion to dismiss the charges. Therefore the trial was terminated with the consent and at the insistence of the defendant and no interest protected by the double jeopardy clause is invaded. In this case the State should be allowed to appeal and seek reversal of such a midtrial termination of the proceedings in a manner favorable to and at the request of the defendant. *United States v. Scott,* 437 U.S. at 100. See *Burks v. United States,* 437 U.S. 1, 57 L.Ed.2d 1, 98 S.Ct. 2141 (1978). This is borne out by the following statement taken from *Scott:*

"We think that in a case such as this the defendant, by deliberately choosing to seek termination of the proceedings against him on a basis unrelated to factual guilt or innocence of the offense of which he is accused, suffers no injury cognizable under the Double Jeopardy Clause if the Government is permitted to appeal from such a ruling of the trial court in favor of the defendant. We do not thereby adopt the doctrine of 'waiver' of double jeopardy rejected in Green [*Green v. United States,* 355 U.S. 184, 2 L.Ed.2d 199, 78 S.Ct. 221 (1957)], supra. Rather, we conclude that the Double Jeopardy Clause, which guards against Government oppression, does not relieve a defendant from the consequences of his voluntary choice. . . ." 437 U.S. at 99.

In summary I would hold the information was sufficient to state a crime under K.S.A. 21-3701. The proceedings were aborted on the motion of defendant and with his consent and further prosecution is not barred because of double jeopardy. Therefore the judgment dismissing the charges against the defendant should be reversed and the case remanded for further proceedings.

MILLER and MCFARLAND, JJ., join in the foregoing dissenting opinion.