(209 P.3d 207)
No. 100,977

CITY OF WICHITA, KANSAS, *Appellant*, v. JEFF W. BANNON, *Appellee*.

Petition for review denied September 22, 2011.

Opinion filed June 19, 2009.

*Sharon L. Dickgrafe*, assistant city attorney, and *Gary E. Rebenstorf*, city attorney, for appellant.

*Henry H. Blase*, of Law Offices of Blase & Blase, of Wichita, for appellee.

Before MCANANY, P.J., GREEN and CAPLINGER, JJ.

MCANANY, J.: The City of Wichita appeals the trial court's dismissal of a criminal trespass charge against Jeff Bannon. The facts that led to the charge against Bannon are set forth in our earlier opinion in *State v. Bannon*, 37 Kan. App. 2d 522, 154 P.3d 1170 (2007), and need not be recounted here. It suffices to say that Mid-America Auto Auction operates an auction facility in Wichita for licensed automobile dealers to buy and sell used cars. Bannon entered the "dealers only" section of the facility after being repeatedly told not to, and he was arrested for criminal trespass under the Wichita city ordinance. The threshold issue is the nature of the district court's ruling that prompted this appeal. This is because the City is not entitled to appeal from a judgment of acquittal. See *State v. Crozier*, 225 Kan. 120, Syl. ¶ 4, 587 P.2d 331 (1978). However, K.S.A. 22-3602(b)(1) authorizes the City to appeal from an order of dismissal.

*Acquittal vs. Dismissal*

As wisely noted by Justice Larson in *State v. Beerbower*, 262 Kan. 248, 252, 936 P.2d 248 (1997): "The distinction between a judgment of acquittal or of dismissal is often not easily determined." So it is here.

At the commencement of Bannon's trial, but before the jury was impaneled, the district court took up the matter of a preliminary instruction for the jury on the elements of the offense with which Bannon was charged. The City prosecutor objected to the Pattern Instructions for Kansas (PIK) instruction proposed by Bannon:

"The PIK talks about entering a structure. And the facts of this case are that the defendant was inside the building, but was told not to enter into another portion of the building, as opposed to entering the building or the property itself.

"The way the PIK is written it would appear that I would need to prove that he was told not to enter any portion of the Mid American Auto Auction, and that's not what the facts actually are in this particular case."

Bannon's counsel responded, "I want to make sure that she's willing to stipulate that those are the facts that she would prove before this court." The City prosecutor responded, "I believe that it would." Bannon's counsel then immediately moved for judgment of acquittal, relying on *State v. Hall*, 270 Kan. 194, 14 P.3d 404 (2000). After hearing arguments of counsel, the court confirmed that the City stipulated that "[Bannon] was inside the structure . . . and one segregated part of that structure he was told to not enter and he did enter, in defiance from the law enforcement officer not to."

After a brief recess to permit the court to review the *Hall* case and the earlier *Bannon* opinion, the court confirmed that the parties stipulated to the following facts:

"[T]he owners of Mid America hired Officer Rosenberg to serve as a security guard and authorized him to reject persons wrongfully on the premises. On the morning of February 11, 2004, Officer Rosenberg was in uniform, with actual and apparent authority to enforce Mid America's policies regarding trespassing.

"Officer Rosenberg testified that he informed Bannon he was not allowed to be present in the auction area without a dealer's pass and that if he attempted to enter, he would be arrested. Bannon entered the auction area in defiance of Rosenberg's repeated admonitions, personally communicated to him, that he was not permitted to enter the area."

The only reservation to the stipulation was Bannon's refusal to admit to the authority of Officer Rosenberg to act, which Bannon's counsel conceded was not relevant to the pending motion. Based upon the stipulation, the judge stated, "I'm going to sustain the motion to dismiss." The judge concluded that, under the stipulated facts, "the city takes the position that that constitutes the crime of criminal trespass. And I follow the rationale of *State v. Hall*, in finding that it does not."

The City prosecutor protested that she was not given an opportunity to read *Hall* and present any argument concerning its holding, and stated, "I think the Court is misconstruing *Hall*, which is a burglary case, and this is a trespass case." The judge relented,

stating, "I'm fine with that, if you want some more briefing time, I'm fine. Frankly, what I'm trying to do is I'm trying to render a decision which gives you the ability to take an appeal." The matter was continued to the following day.

The following day, the court noted its "tentative" ruling the day before on Bannon's motion to dismiss and acknowledged receipt of Bannon's memorandum in support of a motion for judgment of acquittal. The judge observed, "I considered it as a motion to dismiss and I will, unless I'm convinced to the contrary, address it as a motion to dismiss." After taking a brief recess to review the court reporter's notes from the previous day, the judge acknowledged, "I do stand corrected. . . . [It] was a motion for judgment of acquittal." After hearing further argument, the court sustained Bannon's motion for judgment of acquittal. The City appeals.

The court in *Beerbower* looked to *State v. Whorton*, 225 Kan. 251, 589 P.2d 610 (1979), to distinguish a judgment of acquittal from an order of dismissal. The court in *Whorton* noted that the "trial judge's characterization of his own action does not control the classification of the action." 225 Kan. at 254. The *Whorton* court characterized the trial court's action as a judgment of acquittal because the trial court resolved factual issues in the case. The *Beerbower* court observed:

"In *Whorton*, we defined a judgment of acquittal as " 'a resolution correct or not, of some or all of the factual elements of the offense charged.' " 225 Kan. at 254. Although in both *Whorton* and *Lowe v. State*, 242 Kan. 64, 67, 744 P.2d 856 (1987), we found the dismissals were actually judgments of acquittal, the factor we deemed important was that both courts had resolved factual issues prior to the dismissal." *Beerbower*, 262 Kan. at 253.

In support of his claim that we should treat the district court's ruling as a judgment of acquittal, thereby barring the City's appeal, Bannon relies upon a statement in *State v. Anderson*, 40 Kan. App. 2d 69, 72, 188 P.3d 38 (2008), *rev. denied* 287 Kan. 766 (2009), to the effect that while an acquittal generally follows the close of evidence, our Supreme Court in *State v. Ruden*, 245 Kan. 95, 98, 774 P.2d 972 (1989), recognized that an acquittal may be granted before the close of the State's case, such as when a fatal flaw is revealed in the State's opening statement.

In *Ruden*, the trial court entered a judgment of acquittal after suppressing the State's evidence, and the State appealed. Our Supreme Court characterized the trial court's action as a dismissal, thereby preserving the State's right to appeal, rather than as a judgment of acquittal as the trial court incorrectly characterized its order. The Supreme Court noted:

"A main component of the judgment of acquittal is its prohibition against subsequent prosecutions for the same offense based upon the Fifth Amendment protection against double jeopardy. 8A Moore's Federal Practice ¶ 29.08 (2d ed. 1989). The Kansas cases that have allowed a motion for judgment of acquittal to bar an appeal have involved a situation in which the trial has begun and jeopardy has attached. In a jury trial, jeopardy attaches when a jury is impaneled and sworn. *Crist v. Bretz*, 437 U.S. 28, 38, 57 L. Ed. 2d 24, 98 S. Ct. 2156 (1978)." *Ruden*, 245 Kan. at 99.

*Anderson* and *Ruden* do not help Bannon. Here, the district judge did not make any factual determinations upon which to predicate an acquittal. The facts were presented to the district court pursuant to the parties' stipulation. The court simply ruled, predicated upon them, that the City did not have an actionable claim of trespass under the City ordinance. It did so before the jury was empaneled and, thus, before Bannon was placed in jeopardy. In fact, the court and counsel specifically discussed the fact that at the time the motion was asserted jeopardy had not attached since the jury had not been impaneled. Regardless of how the district court characterized its order, it was an order of dismissal and not a judgment of acquittal. Thus, the City is entitled to pursue this appeal pursuant to K.S.A. 22-3602(b)(1).

With respect to the substance of this appeal, the City attempts to hedge its bet by characterizing these proceedings as both an appeal pursuant to K.S.A. 22-3602(b)(1) from an order of dismissal and an appeal pursuant to K.S.A. 22-3602(b)(3) upon a question reserved by the prosecution. In view of our earlier analysis, we treat the City's appeal as an appeal pursuant to K.S.A. 22-3602(b)(1) from an order of dismissal and ignore the issues surrounding a reserved question.

## The Wichita Ordinance

The substantive issue is whether the district court erred in concluding that Bannon's prosecution under the City ordinance was barred by the rationale expressed in *Hall*. This issue is one of law which we review de novo. *State v. VanHecke*, 28 Kan. App. 2d 778, 780, 20 P.3d 1277 (2001).

Bannon advanced, and the district court relied upon, the decision in *Hall* to support dismissal of the City's prosecution. The defendant in *Hall* entered a K-Mart store and proceeded to the stockroom where he was seen stuffing merchandise down his pants. The store was open for business at the time, and customers were invited in to make their purchases. However, the stockroom was for the use of employees only, and K-Mart did not intend for its customers to enter the area. Hall was not an employee.

Hall was convicted of burglary. He appealed, claiming that he was not a burglar because his entry into the store proper was authorized by K-Mart and his subsequent entry into the stockroom did not constitute the entry of a structure for the purpose of committing a theft therein. This court reversed Hall's burglary conviction, stating: "Hall may have been guilty of several criminal offenses, but one of them was not burglary." *State v. Hall*, 27 Kan. App. 2d 313, 319, 3 P.3d 582 (2000), *aff'd* 270 Kan. 194. On review, our Supreme Court affirmed the decision of the Court of Appeals, noting that " '[a] broad construction of K.S.A. 21-3715 would blur the line between burglary and crimes such as shoplifting and criminal trespass.' " 270 Kan. at 202. We read this as a purposeful recognition of the distinction between a burglary prosecution and a prosecution for criminal trespass, and that while burglary may not result from certain unauthorized entries, criminal trespass may. The Kansas burglary statute, K.S.A. 21-3715, makes no reference to entry upon land while our criminal trespass statute, K.S.A. 21-3721, does.

Bannon's analysis of *Hall* leads him to the conclusion that having been permitted entry onto the grounds of the Mid-America Auto Auction in Wichita, he could not be prosecuted for criminal trespass when he entered the portion of the property that was reserved

exclusively for automobile dealers, notwithstanding the fact that the off-limits area was clearly marked and Bannon was personally and repeatedly told not to enter.

Bannon was charged with violating the Municipal Code of the City of Wichita, Kansas, § 5.66.050 (2005), which provides:

"Criminal trespass is entering or remaining upon or in any land, structure, vehicle, aircraft or watercraft by a person who knows he/she is not authorized or privileged to do so, and:

"(a) Such a person enters or remains therein in defiance of an order not to enter or to leave such premises [or] property personally communicated to such person by the owner thereof or other authorized person."

The Wichita ordinance closely follows the language of our criminal trespass statute, K.S.A. 21-3721. While we must strictly construe the Wichita ordinance in favor of the accused, this rule is subordinate to the rule that judicial interpretation must be reasonable and sensible to effect legislative design and intent. See *State v. Paul*, 285 Kan. 658, 662, 175 P.3d 840 (2008).

In their appellate briefs the parties discuss the following unpublished opinions of panels of our court, which are worthy of note.

*State v. Hauser*, No. 95,744, unpublished opinion filed September 28, 2007, *rev. denied* 286 Kan. 1182 (2008), dealt with a burglary conviction, not a criminal trespass conviction. There, the Court of Appeals determined, notwithstanding *Hall*, that a tanning booth with a lockable door located within a tanning salon was a separate structure that could be burglarized.

*City of Hutchinson v. Goering*, No. 93,423, unpublished opinion filed September 2, 2005, was a criminal trespass case. There, the defendant created a disturbance in the office of the Clerk of the District Court in the Reno County Courthouse, a public building. He was told to leave by a district judge, but he failed and refused to do so. He was convicted of criminal trespass under the city ordinance, notwithstanding the fact that his entry into the public courthouse had been lawful and he was directed to leave only a portion of the building, the clerk's office.

Bannon also relies upon a comment in *State v. Fisher*, 232 Kan. 760, 763, 658 P.2d 1021 (1983), that "an otherwise open area enclosed by a low fence is not a structure withing the meaning of the

criminal trespass statute, K.S.A. 21-3721." *Fisher* was a burglary case. The issue in *Fisher* was whether a low fence around a hog pen constitutes a "structure" under our burglary statute. Here, the City's prosecution of Bannon is predicated upon an entry into a restricted area, not entry into a structure pursuant to our burglary statute, as in *Fisher*. This case does not turn on an analysis of what constitutes a structure, the analysis undertaken in *Fisher*.

It has been suggested that a case of criminal trespass under the Wichita ordinance would have required evidence that (1) the security guard directed Bannon off the entire premises with instructions not to return, and (2) Bannon then reentered the property in defiance of the order. We view this as an unreasonable all-or-nothing construction of the ordinance in view of what appears to us to be clear legislative design and intent. Under this proposed construction, if an absent-minded customer inadvertently wanders into a portion of a retail store where customers are not allowed, the proprietor could keep that customer out of the restricted area only by ejecting the customer from the store with instructions never to return. Such an all-or-nothing construction seems unreasonable to us. In our view, a business owner in Wichita has the right to distinguish public areas from private areas, and when a person knowingly and willfully disregards the distinction, recourse is proper under § 5.66.050 of the Wichita Municipal Code.

The ordinance, so construed, still protects Bannon's right to be fully apprised of what conduct it prohibits. Bannon is not left in the dark as to what portion of the property he may lawfully enter and what portion he may not. The ordinance requires the property owner or the owner's authorized representative to personally communicate to the accused its directive in that regard. It is only when the interloper disregards the property owner's clear directive that a violation occurs.

While Bannon is entitled to a strict construction of the ordinance, in our view the construction he advanced, and the district court applied, was not reasonable and sensible in light of our overriding duty to give effect to legislative design and intent.

Having concluded that the district court erred in dismissing this action based upon *Hall*, we need not address the remaining issues

advanced by the City. We set aside the district court's dismissal of this action and remand the case for trial.

Reversed and remanded.