No. 62,729

STATE OF KANSAS, *Appellant*, v. CASSANDRA L. RUDEN, *Appellee.*

(774 P.2d 972)

Opinion filed May 26, 1989.

*C. William Ossmann*, assistant district attorney, argued the cause, and *Robert T. Stephan*, attorney general, *Gene M. Olander*, district attorney, and *Timothy H. Henderson*, legal intern, were on the brief for appellant.

*Terry E. Beck*, of Tilton, Beck & Hoffman, of Topeka, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

ALLEGRUCCI, J.: The State appeals the district court's order

granting the defendant's motion to suppress the State's evidence, in which the court also entered a judgment of acquittal.

Two bench warrants were issued for the failure of Robert Ruden to appear in two civil cases involving limited actions. Ruden's address was listed as 904 Lincoln, Topeka. On April 28, 1988, two Shawnee County sheriff's deputies went to 901 Buchanan, Topeka, to attempt to serve the warrants. At this address is a large house which has been converted into several apartments. Before going to serve the warrants, one of the deputies had been told by another officer that 904 Lincoln was the manager's office but that the apartment address was actually 901 Buchanan. The deputies knocked on the outer front door but received no response. One officer located an individual identified as a "maintenance man," who indicated that Ruden's car was in the parking lot. This maintenance man provided the officer with a passkey to the outer door of the building and a key to the door of the apartment.

The officers unlocked the outer door and knocked on the door of Ruden's apartment. When a female voice asked who was there, the officers, who were in uniform, identified themselves as sheriff's officers. After a short delay, defendant Cassandra Ruden answered the door dressed in a bathrobe. When the officers stated they were looking for Robert Ruden, the defendant informed them he was not at home. The testimony about what happened at this point is conflicting. The officers indicated that defendant gave them permission to enter the residence and search for Robert Ruden. Defendant testified at the suppression hearing that one of the officers said he knew Robert was there and that he was coming in anyway because he had a warrant. One officer testified that, if no one had answered the apartment door, the officers would have used the second passkey to enter. The other officer testified that, if defendant had not given permission to enter, they probably would have entered anyway.

Once inside the apartment, the officers began searching each room for Robert. In the living room area, the officers smelled marijuana and saw the remnants of a hand-rolled cigarette in an ashtray, rolling papers, a plastic baggie, a salt shaker, a cigarette clip, and a wooden box, along with books and magazines, on a coffee table. The officers conferred briefly and decided the box might contain drugs or drug paraphernalia. The officers then

looked in the box and found green vegetation, two small screens, a cigarette clip, and several other items. The officer asked defendant about the items, and she stated that she knew nothing about them because she had been asleep. Defendant was then placed under arrest for possession of marijuana.

Defendant filed a motion to suppress the evidence and a memorandum of support thereof on July 12, 1988. The State filed a written response on July 21, 1988. The case was set for trial on July 22, 1988, but the transcript of the hearing on the motion to suppress indicates that only the suppression hearing was conducted the morning of July 22, 1988. After the court announced the case, it took up the motion to suppress, and the State proceeded with its evidence on the motion. At the close of the evidence, counsel presented argument on the suppression issues. The court then expressed its belief that the officers had no right to enter the apartment to serve a civil bench warrant, but informed the parties that a written order would be drafted and mailed to the parties, notifying them of the next setting in the case depending upon the ruling. The transcript contains no record that a jury was impaneled or sworn or that defendant's right to trial by jury was waived. Furthermore, the record contains no defense request for a judgment of acquittal.

On August 2, 1988, the court filed its decision and verdict, finding that the Fourth Amendment prohibits a nonconsensual entry into a person's home to serve a bench warrant issued pursuant to K.S.A. 1988 Supp. 61-2204. The court further held that the State did not establish by clear and convincing evidence that the search was consensual. The court suppressed all evidence seized from the apartment and entered a judgment of acquittal. The State filed a notice appealing the order to suppress and judgment of acquittal on August 10, 1988.

We first must determine if this court has jurisdiction to hear this appeal in light of the district court's entry of a judgment of acquittal following suppression of the State's evidence. The State argues that the trial court's action can only be classified as a dismissal of the complaint under K.S.A. 22-3602(b)(1) and, therefore, this court has jurisdiction to hear the appeal. The right for the State to appeal is authorized by statute. If no statutory authority for an appeal exists, the appeal must be dismissed. *State v. Hermes*, 229 Kan. 531, 625 P.2d 1137 (1981). The

prosecution is authorized to take a direct appeal in four cases, which are set out in K.S.A. 22-3602(b):

"Appeals to the supreme court may be taken by the prosecution from cases before a district judge as a matter of right in the following cases, and no others:

"(1) From an order dismissing a complaint, information or indictment;

"(2) from an order arresting judgment;

"(3) upon a question reserved by the prosecution; or

"(4) upon an order granting a new trial in any case involving a class A or B felony."

In addition, the State may take an interlocutory appeal from an order suppressing evidence. K.S.A. 22-3603.

The State is not entitled to take an appeal from a judgment of acquittal. *State v. Crozier*, 225 Kan. 120, 587 P.2d 331 (1978); *State v. Gustin*, 212 Kan. 475, 510 P.2d 1290 (1973). The Kansas statute authorizing judgments of acquittal provides:

"(1) The court on motion of a defendant or on its own motion shall order the entry of judgment of acquittal of one or more crimes charged in the complaint, indictment or information after the evidence on either side is closed if the evidence is insufficient to sustain a conviction of such crime or crimes. If a defendant's motion for judgment of acquittal at the close of the evidence offered by the prosecution is not granted, the defendant may offer evidence without having reserved the right.

"(2) If a motion for judgment of acquittal is made at the close of all the evidence, the court may reserve decision on the motion, submit the case to the jury and decide the motion either before the jury returns a verdict or after it returns a verdict of guilty or is discharged without having returned a verdict.

"(3) If the jury returns a verdict of guilty or is discharged without having returned a verdict, a motion for judgment of acquittal may be made or renewed within seven days after the jury is discharged or within such further time as the court may fix during the seven-day period. If a verdict of guilty is returned the court may on such motion set aside the verdict and enter judgment of acquittal. It shall not be necessary to the making of such a motion that a similar motion has been made prior to the submission of the case to the jury." K.S.A. 22-3419.

In spite of the fact that the statute provides that such a motion is appropriate "after the evidence on either side is closed," this court has recognized that a judgment of acquittal may be rendered before the close of the State's case, *e.g.*, where the State's opening statement shows it has no case. *State v. Whorton*, 225 Kan. 251, 255, 589 P.2d 610 (1979) (citing *United States v. Dietrich*, 126 F. 676 [D. Neb. 1904]). In *Whorton*, the motion for acquittal came after the jury had been impaneled and sworn and during the testimony of the first witness. Although the defendant moved for a judgment of acquittal, the court dismissed the

information as amended by the State because it did not allege a charge with enough specificity. 225 Kan. at 253. This court concluded that the trial court's characterization of the motion as one for dismissal was incorrect and that, in fact, the court's action was a judgment of acquittal. We concluded that the appeal was barred, stating:

"Finally we note a judgment of acquittal, correctly or incorrectly arrived at, terminates the prosecution, and the double jeopardy clause of the Fifth Amendment bars further proceedings against the defendant. *United States v. Scott*, 437 U.S. at 91; *Sanabria v. United States*, 437 U.S. 54, 57 L. Ed. 2d 43, 98 S. Ct. 2170 (1978); *United States v. Martin Linen Supply Co.*, 430 U.S. at 571; *Fong Foo v. United States*, 369 U.S. 141, 7 L. Ed. 2d 629, 82 S. Ct. 671 (1962); *State v. Gustin*, 212 Kan. at 479.

"Therefore, we hold no appeal lies from a judgment of acquittal, and the issues raised by the State cannot be considered in this appeal." 225 Kan. at 255.

As we noted in *Whorton*, a trial judge's characterization of his own action does not control the classification of the action. The court defined a judgment of acquittal as " 'a resolution, correct or not, of some or all of the factual elements of the offense charged.' " 225 Kan. at 254 (quoting *United States v. Scott*, 437 U.S. 82, 97, 57 L. Ed. 2d 65, 98 S. Ct. 2187 [1978]). Although, in *Whorton*, the district court incorrectly characterized a motion for judgment of acquittal as a dismissal, the rationale would be the same if a dismissal was incorrectly characterized as an acquittal.

A main component of the judgment of acquittal is its prohibition against subsequent prosecutions for the same offense based upon the Fifth Amendment protection against double jeopardy. 8A Moore's Federal Practice ¶ 29.08 (2d ed. 1989). The Kansas cases that have allowed a motion for judgment of acquittal to bar an appeal have involved a situation in which the trial has begun and jeopardy has attached. In a jury trial, jeopardy attaches when a jury is impaneled and sworn. *Crist v. Bretz*, 437 U.S. 28, 38, 57 L. Ed. 2d 24, 98 S. Ct. 2156 (1978). In a bench trial, jeopardy attaches when the first witness is sworn. 437 U.S. at 37 n.15. See *Willhauck v. Flanagan*, 448 U.S. 1323, 1325-26, 65 L. Ed. 2d 1147, 101 S. Ct. 10 (1980).

In the present case, the decision by the trial court was made after hearing the evidence on the accused's motion to suppress. Although this case had been scheduled for a jury trial, the record contains no indication that proceedings involving the jury were initiated. The court did not enter an order at the close of the

suppression hearing but, instead, reserved its ruling until it had the opportunity to file a written decision. This written decision was rendered on August 2, 1988, several days after the hearing on the motion to suppress. Because jeopardy had not attached, a judgment of acquittal was not appropriate. In addition, the court's characterization of its conduct as a judgment of acquittal was not correct. The decision to suppress the evidence should have resulted in the granting of the motion to suppress and setting the case for *trial.*

Since the court did not correctly characterize its action, its statement that it entered a judgment of acquittal does not control. If a motion to suppress is granted, the State can appeal this decision pursuant to K.S.A. 22-3603. Here, the court evidently believed further prosecution should not be allowed because all evidence was suppressed. In this situation, the court's conduct can only be characterized as granting a dismissal pursuant to K.S.A. 22-3208. In such a case, the State would have the right to appeal the decision pursuant to K.S.A. 22-3602(b)(1). Therefore, regardless of whether the court's conduct is characterized as a suppression order or a dismissal, this court has jurisdiction to consider this appeal.

We next consider whether the district court erred in suppressing the evidence seized during the search. Two bench warrants were issued for the arrest of Robert Ruden for his failure to appear in two limited civil actions after having been duly issued and served a citation. Although the bench warrants do not so indicate, both parties argue and thus apparently agree that these warrants were issued pursuant to K.S.A. 1988 Supp. 61-2204, outlining the procedures to be used in aid of execution against judgment debtors. That statute authorizes the court to issue a bench warrant in certain situations and states, in part:

"If any person fails, neglects or refuses to appear and answer concerning the person's property and income at the time and place specified in an order for a hearing in aid of execution . . . the person shall be guilty of contempt of court, and the court shall issue a citation requiring the person, at an early date specified in the citation, to appear before the court and show cause, if any, why the person should not be punished for contempt. If, after proper service of the citation by the sheriff, the person does not appear before the court on the specified day or if it appears to the court that the person is hiding to avoid the process of the court or is about to leave the county for that purpose, the court may issue an attachment or bench warrant commanding the sheriff to whom it is directed to bring the person before the court to answer for contempt." K.S.A. 1988 Supp. 61-2204.

The court is also authorized to use these procedures if, in the future, a party refuses to disclose nonexempt property.

The trial court held that the Fourth Amendment to the United States Constitution prohibits a nonconsensual entry into a private home to serve a civil bench warrant issued pursuant to K.S.A. 1988 Supp. 61-2204. Although the State recognizes in its brief that the bench warrants here called for a "civil arrest," distinguishable from a criminal arrest based upon a finding of probable cause, it asserts that the limited action court could have found the arrestee guilty of criminal contempt at the contempt hearing if he flagrantly violated the court's orders. The State argues that the bench warrants, in conjunction with the statutory powers granted to law enforcement officers in executing an arrest warrant in a criminal case, gave the officers authority to enter the building to arrest Robert Ruden. The criminal statutory provisions provide in relevant part:

"**Arrest by law enforcement officer.** A law enforcement officer may arrest a person under any of the following circumstances:

"(a) The officer has a warrant commanding that the person be arrested." K.S.A. 22-2401(a).

"**Method of arrest.**

. . . .

"(3) All necessary and reasonable force may be used to effect an entry upon any building or property or part thereof to make an authorized arrest." K.S.A. 22-2405

The State argues that, because the officers had warrants issued in a civil case authorizing the arrest of Robert Ruden, these criminal procedure statutes allowed them to enter the building at 901 Buchanan without obtaining a warrant based upon probable cause or qualifying under an exception to the prohibitions against warrantless search and seizure and warrantless arrest contained in § 15 of the Bill of Rights of the Kansas Constitution and the Fourth Amendment to the United States Constitution. The State recognizes the application of the Fourth Amendment in this case, but argues that it provides no per se prohibition to searches based upon civil arrest warrants. Instead, it argues a reasonableness test should be applied which balances the individual's privacy interest with the circumstances surrounding the governmental intrusion. The record contains no evidence that exigent circumstances existed nor does the State attempt to argue that exigent circumstances justified the search.

The record in the present case contains no indication of why

Robert Ruden did not appear in the limited action cases when ordered by the court. His failure to appear resulted in issuance of the bench warrants. Although the reasons regarding Ruden's failure to appear are not relevant to this case, the fact that the warrants arose in a limited action case means their issuance did not require a finding of probable cause.

In *Threadgill v. Beard*, 225 Kan. 296, 590 P.2d 1021 (1979), which is discussed at length by both parties, this court addressed a finding of indirect contempt pursuant to K.S.A. 61-2204 for an individual's failure to respond to a previous summons. In *Threadgill*, the court upheld a challenge to the limited action statutes that allow service by leaving copies of a summons at an individual's usual place of residence without requiring that the summons actually be delivered into the hands of a resident of the house. The court rejected the argument that limited civil actions and regular civil actions require the same type of service because "[l]imited actions do not present the prospect of the dire consequences possible through the regular civil action." 225 Kan. at 301. The court also noted that an individual has no obligation to cooperate and accommodate a process server, although admittedly the individual cannot obstruct service. 225 Kan. at 303. The decision in *Threadgill* discusses the less stringent service requirements imposed in limited action cases and emphasizes the reduced protections afforded an individual.

In the present case, we must determine if a bench warrant issued in a limited action case for failure to appear allows law enforcement officers, absent consent or exigent circumstances, to enter and search the named individual's home when they believe that the individual is present. Section 15 of the Kansas Bill of Rights provides:

"The right of the people to be secure in their person and property against unreasonable searches and seizures, shall be inviolate; and no warrant shall issue but on probable cause, supported by oath or affirmation, particularly describing the place to be searched and the persons or property to be seized."

The protection provided in the Fourth Amendment to the United States Constitution, although not identical, is essentially the same. Searches and seizures that occur without the prior approval of a judge or magistrate in issuing a warrant are per se unreasonable under the Fourth Amendment to the United States Constitution unless a specifically established and well-delin-

eated exception excuses the need for the warrant. *E.g., Katz v. United States*, 389 U.S. 347, 357, 19 L. Ed. 2d 576, 88 S. Ct. 507 (1967).

This court recognized the unique sensitivity that occurs under the Fourth Amendment in protecting one's reasonable expectation of privacy in the home in *State v. Platten*, 225 Kan. 764, 594 P.2d 201 (1979). The court held that, unless exigent circumstances existed, the defendant's rights were violated under the Fourth Amendment to the United States Constitution and § 15 of the Kansas Bill of Rights when officers forcibly broke into his home without a search or arrest warrant when the individual did not consent to the entry. In reaching its decision, the court noted the prior decision in a civil case, *Monroe v. Darr*, 221 Kan. 281, 559 P.2d 332 (1977), in which the court stated:

"The right of the people to be secure in their homes is a basic right guaranteed by the Kansas Constitution and § 15 of the Bill of Rights. Entry into a private home or apartment by police officers constitutes an invasion of the right of privacy of the members of the family residing there and unless justified by legal privilege gives rise to a cause of action for breach of privacy." 221 Kan. at 287.

The court in *Monroe* noted that, to justify a warrantless entry into a private residence, the police must show not only probable cause but also exigent circumstances that make an immediate warrantless search imperative. 221 Kan. at 287.

Following the decision in *Platten*, the United States Supreme Court, in *Payton v. New York*, 445 U.S. 573, 63 L. Ed. 2d 639, 100 S. Ct. 1371 (1980), held that, unless special circumstances are present, warrantless arrests in the home are unconstitutional. 445 U.S. at 575. In reaching its decision, the United States Supreme Court recognized the purpose of the Fourth Amendment in limiting the authority of general warrants that were not based upon probable cause. The Court noted that "the 'physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed.'" 445 U.S. at 585-86 (quoting *United States v. United States District Court*, 407 U.S. 297, 313, 32 L. Ed. 2d 752, 92 S. Ct. 2125 [1972]). See *Welsh v. Wisconsin*, 466 U.S. 740, 748, 80 L. Ed. 2d 732, 104 S. Ct. 2091 (1984).

In *Payton*, the State argued that only a search warrant based on probable cause to believe the suspect is at home at a given time can adequately protect the privacy interest of the defendant, and "since such a warrant requirement is manifestly impractical," 445 U.S. at 602, there need be no warrant of any kind. The Court rejected this argument, stating:

"It is true that an arrest warrant requirement may afford less protection than a search warrant requirement, but it will suffice to interpose the magistrate's determination of probable cause between the zealous officer and the citizen. If there is sufficient evidence of a citizen's participation in a felony to persuade a judicial officer that his arrest is justified, it is constitutionally reasonable to require him to open his doors to the officers of the law. Thus, for Fourth Amendment purposes, an arrest warrant *founded on probable cause* implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." (Emphasis added.) 445 U.S. at 602-03.

A finding of probable cause to support issuance of the warrant was crucial to the court's decision that an arrest warrant authorizes a limited intrusion into an arrestee's home to execute the warrant. Both § 15 of the Kansas Bill of Rights and the Fourth Amendment require that warrants be issued only when based upon a finding of probable cause. In Kansas, to issue a warrant for an arrest, a magistrate must find from the complaint or from an affidavit filed with a complaint that probable cause exists to believe "both that a crime has been committed and that the defendant has committed it." K.S.A. 22-2302(1). The limited action statute allowing for the issuance of this bench warrant contains no requirement that the court make a finding of probable cause to believe that a crime has been committed. Without such a finding, the warrant issued cannot comply with the explicit requirements of § 15 of the Kansas Bill of Rights or the Fourth Amendment.

For probable cause to exist, facts and circumstances known to the officers and of which they have reasonably trustworthy information must be sufficient to warrant a reasonable person's belief that an offense has been or is being committed. *Brinegar v. United States*, 338 U.S. 160, 175-76, 93 L. Ed. 1879, 69 S. Ct. 1302 (1949). A practical, nontechnical definition of probable cause is all that is required. *Texas v. Brown*, 460 U.S. 730, 742, 75 L. Ed. 2d 502, 103 S. Ct. 1535 (1983). The distinction between the issuance of a bench warrant to assist the execution of a judgment in a limited action case and an arrest warrant based upon a finding of probable cause is significant. We find, therefore, that the bench warrants in the present case were inadequate to support the entry by the deputies into the defendant's home. The intrusion by the deputies into defendant's home to execute

the bench warrants was a violation of the Fourth Amendment to the United States Constitution and § 15 of the Kansas Constitution Bill of Rights.

The State argues that, even if the search was illegal, the evidence was admissible because the defendant consented to the officers' search of the apartment. An individual may waive the requirement of a search warrant or consent to a search without a warrant, but the State has the burden to show such consent or waiver is voluntarily, intelligently, and knowingly given. *State v. Jakeway*, 221 Kan. 142, Syl. ¶ 4, 558 P.2d 113 (1976). The existence and voluntariness of a consent to search and seizure is a question of fact that the trier of fact must decide in light of the totality of the circumstances; the trial court's decision will not be overturned on appeal unless clearly erroneous. *State v. Buckner*, 223 Kan. 138, 144, 574 P.2d 918 (1977). The State must prove voluntariness by a preponderance of the evidence. 223 Kan. at 143. In determining whether consent was voluntary, the trial court should consider whether the individual was threatened or coerced, and whether he was informed of his rights. *State v. Nicholson*, 225 Kan. 418, 423, 590 P.2d 1069 (1979).

In finding that voluntary consent was not given to search the apartment, the trial court correctly noted that the issue was a question of fact with the burden on the State to prove that consent to the search was voluntary. Citing *United States v. Mendenhall*, 446 U.S. 544, 64 L. Ed. 2d 497, 100 S. Ct. 1870 (1980), the court also noted that such consent is not to be lightly inferred but must be determined by an examination of the totality of the circumstances. The trial court, however, incorrectly stated that the burden of proof is on the State to show voluntary consent by "clear and convincing" evidence rather than the proper standard of a preponderance of the evidence.

The trial court noted three factors that influenced its decision. First, both deputies believed that they had the authority to search the apartment and that Robert Ruden had been avoiding service. Based upon observations during the testimony of these officers, the court concluded that their actions three months earlier were more aggressive than the neutral attitude they stated in July at the hearing. Second, having observed the testimony of the defendant on this issue, the court found it doubtful that she

voluntarily admitted these officers under the conditions presented. Third, the court incorrectly relied upon the need of the State to prove voluntary consent by clear and convincing evidence.

Whether, in the present case, the State met its burden of proving voluntary consent by a preponderance of the evidence depends upon the credibility of the witnesses. The trial court's observations of the demeanor of the officers and the defendant during testimony at the motion to suppress is essential to deciding if the State met its burden. The appellate court cannot decide a question of fact that is based upon conflicting testimony which requires an assessment of the demeanor and credibility of the witnesses.

The case is remanded to the district court to determine if the State proved by a preponderance of the evidence that the defendant voluntarily consented to the search.