(792 P.2d 358)
No. 64,474

STATE OF KANSAS, *Appellant,* v. LEONARD HENRY, *Appellee.*

Opinion filed May 18, 1990.

*Gene Porter,* county attorney, *Ronald L. Hodgson,* assistant county attorney, and *Robert T. Stephan,* attorney general, for appellant.

*Joel B. Jackson,* of Great Bend, for appellee.

Before BRAZIL, P.J., LARSON, J., and JOHN W. WHITE, District Judge, assigned.

BRAZIL, J.: The State of Kansas takes an interlocutory appeal from a district court decision suppressing all the evidence obtained from a traffic stop because the stop was not premised on reasonable suspicion. Based upon the stipulation of Henry that he freely and voluntarily consented to the search of his vehicle and the glove compartment in his vehicle, we reverse.

Leonard Henry was charged with possession of methamphetamine and drug paraphernalia. Henry filed a motion to suppress the evidence which was submitted to the court on the following stipulated facts. In August 1989, a Hoisington police officer saw

Henry driving a car. The officer recalled hearing that Henry's driver's license had been suspended and decided to stop Henry to check the status of his license. The officer contacted the dispatcher to confirm the owner of the car and the status of Henry's license but did not receive any information back before stopping Henry approximately one block from his home. The officer smelled what he thought to be marijuana. Henry produced a valid driver's license. After verifying the license, the officer asked to search the car and glove compartment. Henry authorized the search, and the officer found drugs in the glove compartment.

The trial court suppressed the evidence obtained after the stop because the stop was not based on an articulable suspicion. The trial court decided that Henry's voluntary consent to the search of the car and glove compartment did not affect the admissibility of the evidence because the initial stop was illegal and the officer suspected that drugs were in the car only after talking with Henry about the traffic offense and observing his physical demeanor. The State filed an interlocutory appeal pursuant to K.S.A. 22-3603.

K.S.A. 22-2402(1) provides that a law enforcement officer may stop a person in a public place if the officer reasonably suspects the person is committing a crime. The Supreme Court has held that the statute requires that a police officer have a reasonable and articulable suspicion, based on objective facts, that the person stopped has committed, is committing, or is about to commit a crime. *State v. Epperson*, 237 Kan. 707, 712, 703 P.2d 761 (1985). "The reasonableness of the search is determined by the trial court from the facts and circumstances of the case." *State v. Kirby*, 12 Kan. App. 2d 346, 352-53, 744 P.2d 146 (1987), *aff'd* 242 Kan. 803, 751 P.2d 1041 (1988). Reasonableness is based on the totality of the circumstances and is viewed in terms as understood by those familiar with the field of law enforcement. *State v. Keene*, 8 Kan. App. 2d 88, 90, 650 P.2d 716, *rev. denied* 232 Kan. 876 (1982).

The State argues the trial court applied the wrong standard in determining whether the officer had a reasonable suspicion to stop Henry. We disagree. The transcript of the trial court's order reflects that the trial court stated the issue was whether the officer had an articulable suspicion to stop Henry to determine whether

he was involved in ongoing criminal activity. The trial court then recited all of the facts it considered in ruling on the motion to suppress, which clearly demonstrate that it properly considered the totality of the circumstances.

1. The stop.

The trial court granted Henry's motion to suppress and held the evidence seized from the car was inadmissible. In reaching this conclusion, the court held the initial stop was unreasonable because the officer lacked a reasonable and articulable suspicion to justify the stop. The motion to suppress was submitted to the trial court on stipulated facts. In such a case, this court on appellate review has as good an opportunity to examine and consider the evidence as did the trial court; and the proper standard of appellate review is thus de novo. *Lightner v. Centennial Life Ins. Co.*, 242 Kan. 29, 31, 744 P.2d 840 (1987); *Crestview Bowl, Inc. v. Womer Constr. Co.*, 225 Kan. 335, 336, 592 P.2d 74 (1979).

In *Delaware v. Prouse*, 440 U.S. 648, 663, 59 L. Ed. 2d 660, 99 S. Ct. 1391 (1979), the Supreme Court held that arbitrarily stopping a driver to check his license and car registration is unreasonable under the Fourth Amendment. A police officer must have reasonable articulable suspicion the driver is not licensed, the car is not registered, or the vehicle or an occupant is otherwise subject to seizure for a violation of the law. "What is reasonable is based on the totality of circumstances and is viewed in terms as understood by those versed in the field of law enforcement." *State v. Keene*, 8 Kan. App. 2d at 90 (citing *United States v. Cortez*, 449 U.S. 411, 66 L. Ed. 2d 621, 101 S. Ct. 690 [1981]).

Here, the officer recalled hearing that Henry's license was suspended or that he did not have a license. The officer's belief was not based on firsthand knowledge. The officer knew Henry and knew where he lived. For reasons not explained in the stipulated facts, the officer determined it was necessary to stop Henry before he reached his home, although the officer had not yet received a response from the dispatcher. The fact that the officer knew Henry, knew where he lived, and had seen him driving obviated the need of stopping him immediately. If warranted by the dispatcher's response, the officer could have later arrested Henry based on his earlier observations. The trial court correctly

decided that the officer lacked, reasonable articulable suspicion to stop Henry.

2. The consent.

The trial court ruled that the officer acquired knowledge which led him to ask Henry if he could search the car only after the illegal stop and that Henry's consent did not validate the search. The State argues Henry's consent removes any taint from the illegal search, thereby making the evidence admissible.

The United States Court of Appeals dealt with a similar issue in *United States v. Carson*, 793 F.2d 1141 (10th Cir. 1986). In *Carson*, a deputy sheriff illegally looked under the defendant Carson's vest and discovered dressed doves. Based on this discovery, the deputy contacted a state game protector, returned to the area where Carson was hunting, and received consent from Carson to search his truck. The deputy again looked under the vest and found the doves. Carson was charged with unlawful possession of doves. Carson filed a motion to suppress, which was denied. The court found that Carson's consent to the second search purged the evidence obtained of any taint from the unlawful first search. The court held "that *voluntary* consent, as defined for Fourth Amendment purposes, is an intervening act free of police exploitation of the primary illegality and is sufficiently distinguishable from the primary illegality to purge the evidence of the primary taint." 793 F.2d at 1147-48.

In deciding *Carson*, the Tenth Circuit reviewed *Wong Sun v. United States*, 371 U.S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407 (1963), in which the United States Supreme Court held that, although the evidence would not have come to light but for the prior illegal police conduct, such evidence is not inadmissible per se. The appropriate question is whether the evidence has been discovered by exploitation of the primary illegality or instead by sufficiently distinguishable means so as to be purged of the primary taint. 371 U.S. at 487-88. The *Carson* court decided that " 'exploitation of the primary illegality' " in the context of voluntary consent means that the police used the fruits of the primary illegality to coerce the defendant into granting consent. *United States v. Carson*, 793 F.2d at 1148. The court stated:

"Under the Fourth Amendment, evidence obtained pursuant to defendant's consent is admissible only if defendant's grant of consent is voluntary

under the totality of the circumstances. *Schneckloth v. Bustamonte,* 412 U.S. 218, 248-49, 93 S. Ct. 2041, 2058-59, 36 L. Ed. 2d 854 (1973). Therefore, in a case in which evidence is obtained pursuant to consent granted subsequent to illegal police actions, the 'exploitation' issue under *Wong Sun* is resolved simply by determining whether or not defendant's *grant* of consent was voluntary under the totality of the circumstances. The police officers' reason or basis for asking for defendant's consent is irrelevant to the 'exploitation' issue unless the manner in which the police officers request consent renders defendant's consent involuntary. When defendant's grant of consent is voluntary, then there is no exploitation; as we will discuss *infra,* the findings of voluntary consent and 'exploitation' are mutually exclusive." 793 F.2d at 1149.

To be voluntary, the defendant's consent must be " 'unequivocal and specific' " and " 'freely and intelligently' " given. The consent must be given without duress or coercion, express or implied. The State bears the burden of proving voluntariness. 793 F.2d at 1150 (quoting *United States v. Abbott,* 546 F.2d 883, 885 [10th Cir. 1977]). The Kansas Supreme Court recently reiterated that the question of voluntariness should be decided in light of the totality of the circumstances, considering whether the individual was threatened or coerced and whether the individual was informed of his rights. *State v. Ruden,* 245 Kan. 95, 774 P.2d 972 (1989).

Here, the initial stop was not based on reasonable suspicion. However, the parties stipulated that Henry freely and voluntarily consented to the search of his car and glove compartment. As in *Carson,* Henry's voluntary consent serves as an intervening act which is free of police exploitation of the primary illegal stop, thereby purging the evidence of the primary taint.

Reversed and remanded for further proceedings.