(937 P.2d 453)
No. 77,373

STATE OF KANSAS, *Appellant*, v. JACQUELINE KAY KRIEGH, *Appellee.*

Opinion filed May 2, 1997.

*Thomas R. Stanton*, assistant county attorney, *Julie McKenna*, county attorney, and *Carla J. Stovall*, attorney general, for appellant.

*Robert A. Thompson*, of Salina, for appellee.

Before BRAZIL, C.J., MARQUARDT, J., and EDWARD E. BOUKER, District Judge, assigned.

MARQUARDT, J.: The State appeals from the district court's journal entry suppressing all evidence.

On January 10, 1996, Investigator Janet Guerrero of the Salina Police Department and Detective Bryan Gravatt of the Dickinson

County Sheriff's Office went to Jacqueline Kay Kriegh's residence based on information from a court services officer that there had been illegal drug use in the house. The officers did not have a search warrant.

Investigator Guerrero made an audio tape of the entire entry and search of Kriegh's residence on which the district court based many of its factual findings. However, neither the tape nor a transcript of the tape is included in the record on appeal.

Investigator Guerrero testified that when Jacqueline's 15-year-old son, Matt, answered the door, he was asked if the officers could come in because they needed to speak to his mother. Matt did not respond to this request but did go get his mother. The district court found that the officers entered the residence concurrent with their request to enter.

Investigator Guerrero testified that while the officers were waiting for Matt to get Jacqueline, Detective Gravatt noticed a marijuana stem in an ashtray on the dining room table and that this stem was noticeable from where they were standing.

Jacqueline testified that when she came out to the dining area, the officers were "a good ten feet at least inside my door," standing over the dining room table looking at two ashtrays. The dining area is separated from the entryway by a partial wall. Jacqueline testified that the officers told her that they had "heard reports," and asked if they could "look around" the house. Jacqueline testified further that while Investigator Guerrero was talking to her, Guerrero picked up an ashtray, picked around in it, and then said that she had found a marijuana stem. Investigator Guerrero denied that she or Detective Gravatt had picked through the ashtray.

Jacqueline told the officers that a young woman had been in her home several days before, who had been smoking marijuana in the house. This information was apparently consistent with the information received from the court services officer. Jacqueline also told the officers that she had told this young woman to leave her house.

Investigator Guerrero testified that Jacqueline consented to her request to take a "quick look around." The record reflects that Investigator Guerrero asked Jacqueline at least four or five times if she could take a "quick look around." Jacqueline told the officers

that they would not find anything. When Investigator Guerrero asked Jacqueline if she could look around her bedroom, Jacqueline responded, "I guess so." The district court noted that on the tape, after the third request to take a "quick look around," Investigator Guerrero indicated to Jacqueline that the marijuana stem that she had found provided authority for a search independent of her consent.

While searching Jacqueline's bedroom and purse, Investigator Guerrero found a small tin box that contained what she suspected to be marijuana seeds, a brown bottle that contained what she suspected to be prescription drugs, and some cigarette rolling papers. Investigator Guerrero asked Jacqueline if she had a prescription for the pills, and Jacqueline responded that she did not.

The State charged Jacqueline with possession of marijuana, a drug severity level 4 felony because she had a prior conviction; possession of drug paraphernalia, a class A misdemeanor; possession of hydrocodone, a drug severity level 4 felony; and possession of propoxyphene, a class A misdemeanor.

Jacqueline filed a motion to suppress all of the evidence that resulted from the search of her residence. The district court granted the motion, finding that Matt did not consent to the officers entering the residence. The district court also found that there was no clear and unequivocal consent on the tape and that there was no "clear unequivocal knowing, voluntary informed consent to any search of this person's home."

The State filed an interlocutory appeal from the journal entry suppressing the evidence. See K.S.A. 22-3603.

The State argues generally that the district court erred in suppressing the evidence.

On a motion to suppress evidence, the State bears the burden of proving to the district court the lawfulness of the search and seizure by a preponderance of the evidence. *State v. Garcia*, 250 Kan. 310, 318, 827 P.2d 727 (1992); see *State v. Strecker*, 230 Kan. 602, 608, 641 P.2d 379 (1982). An appellate court will uphold a district court's suppression of evidence if the ruling is supported by substantial competent evidence. *Garcia*, 250 Kan. at 318.

"The existence and voluntariness of a consent to search and seizure is a question of fact to be decided in the light of all attendant circumstances by the trier of facts and will not be overturned on appeal unless clearly erroneous." *Strecker*, 230 Kan. at 608; see *State v. Johnson*, 253 Kan. 356, 361-62, 856 P.2d 134 (1993).

An appellate court should not reweigh the facts and substitute its judgment for that of the district court. *State v. Walter*, 234 Kan. 78, 81, 670 P.2d 1354 (1983).

"The trial court's observations of the demeanor of the officers and the defendant during testimony at the motion to suppress is essential to deciding if the State met its burden. The appellate court cannot decide a question of fact that is based upon conflicting testimony which requires an assessment of the demeanor and credibility of the witnesses." *State v. Ruden*, 245 Kan. 95, 106, 774 P.2d 972 (1989).

The State argues that the record "clearly shows" that the district court believed that an officer may not rely on a juvenile's consent to gain entry into a residence. However, the district court did not hold that a juvenile could *never* give a valid consent to a search or entry. Rather, the district court noted these specific facts in making its finding: (1) The officers entered the residence concurrent with the request to enter, (2) Matt did not verbally respond to the officer's request to enter, and (3) the adult the officers were there to see was at home. There is no reported Kansas case addressing the validity of a third-party consent by the minor child of a defendant.

"Subject to a 'few specifically established and well-delineated exceptions,' searches and seizures without a warrant are unreasonable." *Strecker*, 230 Kan. at 604 (quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 454-55, 29 L. Ed. 2d 564, 91 S. Ct. 2022, *reh. denied* 404 U.S. 874 [1971]). "One of the exceptions to the search warrant requirement is consent, which must be given voluntarily, intelligently, and knowingly and proven by a preponderance of the evidence." *Johnson*, 253 Kan. at 362. "To establish consent, it must be clear that the search was permitted or invited by the individual whose rights are in question without duress or coercion." *State v. Crowder*, 20 Kan. App. 2d 117, 120, 887 P.2d 698 (1994).

In *United States v. Matlock*, 415 U.S. 164, 170-71, 39 L. Ed. 2d 242, 94 S. Ct. 988 (1974), the Supreme Court stated:

"[T]he consent of one who possesses common authority over premises or effects is valid as against the absent, nonconsenting person with whom that authority is shared. . . . [W]hen the prosecution seeks to justify a warrantless search by proof of voluntary consent, it is not limited to proof that consent was given by the defendant, but may show that permission to search was obtained from a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected."

In *State v. Ratley*, 16 Kan. App. 2d 589, 591, 827 P.2d 78 (1992), this court quoted and adopted the rule from *Matlock*. The *Ratley* court further held "that Kansas adopts the 'apparent authority' rule, which makes valid a consent to search when the facts available to an officer would warrant a person of reasonable caution to believe the consenting party had authority over the premises to be searched." 16 Kan. App. 2d at 595.

Modern cases evaluating the validity of a minor's consent to a search of a defendant's residence have typically applied the *Matlock* common authority test. Annot., 99 A.L.R.3d 598, 600; see 3 LaFave, Search and Seizure § 8.4(c), p. 772 (1996); see, *e.g.*, *Saavedra v. State*, 622 So. 2d 952, 957 (Fla. 1993), *cert. denied* 510 U.S. 1080 (1994). Under the *Matlock* common authority test, courts apply "a case-by-case approach to determine the scope of a minor's common authority to consent and whether the consent was knowing and voluntary." *Saavedra*, 622 So. 2d at 957.

Although age is a factor to consider in ascertaining whether consent was given willingly, minority status alone does not prevent one from giving consent. *Com. v. Maxwell*, 505 Pa. 152, 162, 477 A.2d 1309, *cert. denied* 469 U.S. 971 (1984); see *Doyle v. State*, 633 P.2d 306, 308 (Alaska App. 1981).

In *Lenz v. Winburn*, 51 F.3d 1540, 1548-49 (11th Cir. 1995), the court held that minors have the capacity to give a third-party consent where the circumstances surrounding the consent demonstrate that it was voluntarily given and free of duress or coercion.

The availability or presence of the parent in the home is another factor to consider in determining the scope and validity of the minor's consent. See *State v. Will*, 131 Or. App. 498, 505-06, 885

P.2d 715 (1994); see also *Hembree v. State*, 546 S.W.2d 235, 241 (Tenn. Crim. App. 1976) (holding that where parents and son are in custody and are equally accessible to give consent, the consent of the minor son does not waive the constitutional rights of the parents); *Saavedra*, 622 So. 2d at 956 (stating per se rule that third-party consent is only valid if the party who is the target of the search is not present or is present and does not object to the search).

Another factor is the scope of the consent requested and given. Thus, a minor is more likely to have adequate common authority to allow entry into the home than to allow a thorough search of the premises. See *Doyle*, 633 P.2d at 309; 3 LaFave, Search and Seizure § 8.4(c), pp. 772-74 n.88; *cf. State v. Pamer*, 70 Ohio App. 3d 540, 542-43, 591 N.E.2d 801 (1990) (distinguishing entry from search and declining to apply *Matlock* common authority test to entry). This is not to say that entry into the home is not protected by the Fourth Amendment to the United States Constitution as interpreted by Kansas courts. See *Ruden*, 245 Kan. at 103 (quoting the United States Supreme Court and noting that the physical *entry* into the home is the chief evil against which the protection of the Fourth Amendment is directed). Rather, the scope of the consent is a factor to be considered in determining whether the minor had authority to consent to the entry and then to the search.

In light of these principles, Matt had the authority to allow the officers to enter the residence while he went to get his mother; however, there is nothing in the record that indicates that Matt consented to the officers entering the home. Matt did not verbally respond to the officer's request to enter, and the audio tape that the district court relied on in making its factual conclusion that Matt did not consent to the officers entering the home is not a part of the record on appeal.

An appellant bears the burden to provide a record sufficient to establish the claimed error; in the absence of such a record, an appellate court presumes that the action of the district court was proper. See *State v. Humphrey*, 258 Kan. 351, 366, 905 P.2d 664 (1995). The State has not met this burden. The State is asking this court to reverse the factual findings of the district court without

providing the evidentiary basis upon which those findings were made.

The State also argues that the district court erred in ruling that Jacqueline did not validly consent to the search of her residence.

As noted above, consent "must be given voluntarily, intelligently, and knowingly." *Johnson*, 253 Kan. at 362. "[I]t must be clear that the search was permitted or invited by the individual whose rights are in question without duress or coercion." *Crowder*, 20 Kan. App. 2d at 120. "To be voluntary, the defendant's consent must be ' "unequivocal and specific." ' " *State v. Henry*, 14 Kan. App. 2d 416, 420, 792 P.2d 358, *rev. denied* 247 Kan. 706 (1990).

"In determining whether consent was voluntary, the trial court should consider whether the individual was threatened or coerced, and whether he was informed of his rights." *Ruden*, 245 Kan. at 105; *cf. Schneckloth v. Bustamonte*, 412 U.S. 218, 248-49, 36 L. Ed. 2d 854, 93 S. Ct. 2041 (1973) (holding that a defendant's knowledge of the right to refuse to consent is not a requirement for a valid consent, but is a factor to be considered).

"Mere submission to lawful authority does not equate to consent, rather valid consent must be unequivocal and specific, and freely and intelligently given." *U.S. v. Manuel*, 992 F.2d 272, 275 (10th Cir. 1993) (citing *Florida v. Royer*, 460 U.S. 491, 497, 75 L. Ed. 2d 229, 103 S. Ct. 1319 [1983]); *cf. Johnson*, 253 Kan. at 362-63.

The State argues that the district court erred because it based the suppression on its disapproval of the use of the term "look around" as opposed to search. The State notes that in *Strecker*, the police had asked permission to look around. The Kansas Supreme Court reversed the district court's decision to suppress the evidence obtained in the search. 230 Kan. at 609. *Strecker* indicates that "look around" is an acceptable phrase for officers seeking a consent to search. See 230 Kan. at 609.

Here, the district court held that "a repeated asking if—'Mind if we have a quick look around,' which is finally *yielded to without a clear consent*, is not a consent to search, particularly a search of one's home." (Emphasis added.)

Regardless of the district court's approval or disapproval of the phrasing of the officer's question, an equivocal consent or mere

yielding to authority is not a valid consent. See *Royer*, 460 U.S. at 497; *Henry*, 14 Kan. App. 2d at 420. Here, the district court found that "there was no clear and unequivocal consent on that tape." Without the audio tape, this court cannot review that finding.

Affirmed.