(14 P.3d 1186)

No. 83,746

STATE OF KANSAS, *Appellee*, v. SCOTT D. DWYER, *Appellant*.

Opinion filed December 8, 2000.

*Peter Maharry*, assistant appellate defender, and *Jessica R. Kunen*, chief appellate defender, for appellant.

*Charles R. Reimer*, assistant district attorney, *Nola Foulston*, district attorney, and *Carla J. Stovall*, attorney general, for appellee.

Before BEIER, P.J., GERNON, J., and JANICE D. RUSSELL, District Judge, assigned.

BEIER, J.: Defendant-appellant Scott D. Dwyer appeals the district court's denial of his motion to suppress evidence from a warrantless search of his apartment. We affirm the district court's ruling and Dwyer's convictions for possession of methamphetamine and marijuana.

Our standard of review requires us to uphold the trial court's denial of a motion to suppress if its factual findings are supported

by substantial competent evidence and we are satisfied that its ultimate application of the law to those facts is correct. See *State v. Wakefield*, 267 Kan. 116, 131, 977 P.2d 941 (1999); *State v. Vandiver*, 257 Kan. 53, 58, 891 P.2d 350 (1995); *State v. Crowder*, 20 Kan. App. 2d 117, 119, 887 P.2d 698 (1994).

The evidence regarding what happened on the day Dwyer was arrested conflicted in certain critical details. The police testified that they talked to Dwyer outside his apartment door, which he was holding shut behind him. They smelled burning marijuana and asked Dwyer if he wanted to show them where the marijuana was. Dwyer said, "Yeah, okay," and went into his apartment, leaving the door open behind him. The police officers interpreted this exchange to mean that they had permission to follow, and they did so. Having entered the apartment, the police recovered the marijuana, sought and received Dwyer's permission to search the apartment further, and recovered additional drug evidence.

Dwyer's only significant departure from the police version of events at his apartment is that the police did not ask him if he wanted to show them where the marijuana was but requested he get it for them. He said he did not expect the police officers to follow him into his apartment and denied that he consented to the later search.

Dwyer also testified the officers were not yelling or talking in a loud tone; they did not touch him; and they did not physically intimidate him. Although he suggested that they go upstairs to talk, he did not attempt to leave the area immediately outside of his door, and the officers did not prevent him from doing so.

Dwyer also said he did not protest when the officers walked into his apartment because he did not think there was any point in it. The police testified that Dwyer was cooperative at all times and appeared to be relaxed during their conversation with him. After he had received his *Miranda* warnings, Dwyer discussed his drug use with the officers.

Dwyer argues initially that the conversation with the officers outside his door amounted to a seizure of his person subject to Fourth Amendment analysis. We disagree. Dwyer's own testimony belies the conclusion that his freedom was restricted in any mean-

ingful way at this point. He could have told the officers he did not want to talk to them and retreated to his apartment or shut the door and walked up the stairs and away from them. The politely and calmly executed "knock and talk" conversation outside the apartment did not constitute an investigatory detention. See *United States v. Park-Swallow*, 2000 WL 82183 (D. Kan., April 18, 2000) (noncoercive "knock and talk" a consensual encounter); see also *State v. Reason*, 263 Kan. 405, 412, 951 P.2d 538 (1997) (officers' initial approach to sleeping defendant in parked automobile a voluntary encounter).

Dwyer next argues he merely submitted to authority and did not consent to police entry into his apartment; further, any consent was not "unequivocal and specific" as required under *State v. Henry*, 14 Kan. App. 2d 416, 420, 792 P.2d 358, *rev. denied* 247 Kan. 706 (1990). Consent must be given voluntarily, intelligently, and knowingly, and proved by a preponderance of the evidence. " '[I]t must be clear that the search was permitted or invited by the individual whose rights are in question without duress or coercion.' " *State v. Kriegh*, 23 Kan. App. 2d 935, 938, 937 P.2d 453 (1997) (quoting *State v. Crowder*, 20 Kan. App. 2d 117, 120, 887 P.2d 698 [1994]).

The district court is charged with resolving factual conflicts because it is in a position to assess the demeanor and credibility of witnesses. It did so here by accepting the police testimony and rejecting Dwyer's testimony of what occurred just before the officers' entry into the apartment. We cannot and will not assess witness demeanor and credibility in the same manner as the district court, see 23 Kan. App. 2d at 938 (quoting *State v. Ruden*, 245 Kan. 95, 106, 774 P.2d 972 [1989]), and we are satisfied that substantial competent evidence supports its factual findings in this case. We thus assume the truth of the police version of events in evaluating whether Dwyer's statements and behavior met the legal standard for consent.

According to the police, when they asked Dwyer if he wanted to show them where the marijuana was, he responded affirmatively and opened the door he had been holding closed. He then walked into the apartment and left the door open behind him. Obviously,

he knew where the marijuana was when he said he would show the police its location, and he knew they would have to enter his apartment to be able to see it. He did not tell the officers to wait outside. He did not shut the door behind him as he walked inside. Rather, he led the police into his bedroom, where he pulled the marijuana out from its hiding place. Under these facts, we have no trouble agreeing with the district court's legal conclusion that Dwyer voluntarily, unequivocally, and specifically consented to the officers' entry into his apartment.

Dwyer next argues that he did not consent to the later search of his apartment. On this point too, the district court resolved a factual dispute by accepting the police version of events. According to that version, after the marijuana was found, the police asked Dwyer if they would find any other drugs. He responded that what they had already seen was "all of it." One of the officers then asked Dwyer if he would mind if the officers looked around to make sure there was not anything else. Dwyer said, "Sure, go ahead."

Again, it is not our function to reweigh witness credibility when testimony is conflicting. 23 Kan. App. 2d at 938. The police version accepted by the district court constituted substantial and competent evidence sufficient to support its factual findings and its conclusion of law on the adequacy of the consent to search. Moreover, Dwyer's own testimony about the demeanor of the police and the police testimony about Dwyer's outward appearance of relaxation and his cooperation support the conclusion that Dwyer's will was not overborne.

Affirmed.